# SCHARRENBERG *v.* DOLLAR STEAMSHIP COMPANY ET. AL.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 192. Argued October 12, 1917.—Decided November 5, 1917.

Inducing and assisting aliens to come from abroad, working as seamen on the way, for *bona fide* service as seamen on an American ship during her voyage from American ports to foreign countries and while she lies in such ports preparatory to or in the course of such voyage, is not an assisting or encouraging of the importation or migration of alien "contract laborers" "into the United States," within §§ 4 and 5 of the Act of February 20, 1907, 34 Stat. 898, as amended by the Act of March 26, 1910, 36 Stat. 263.

As these acts of Congress apply to all alien contract laborers without regard to their origin or nationality, in a suit to enforce their highly penal provisions the circumstance that the aliens in question were Chinese subjects is without significance.

An American ship engaged in foreign commerce is not a part of the territory of the United States in the sense that seamen employed upon her while in American ports or on voyages can be said to be performing labor in this country within the meaning of the statutory provisions above cited.

229 Fed. Rep. 970, affirmed.

THE case is stated in the opinion.

· *Mr. H. W. Hutton*, with whom *Mr. J. H. Ralston* and *Mr. W. E. Richardson* were on the briefs, for petitioner.

*Mr. Nathan H. Frank*, with whom *Mr. Irving H. Frank* was on the brief, for respondents.

MR. JUSTICE CLARKE delivered the opinion of the court.

This is a suit to recover penalties upon the claim that the defendants "knowingly assisted and encouraged the importation and migration" of certain alien contract laborers into the United States, for the purpose of having them perform labor therein in violation of §§ 4 and 5 of the Act of Congress of February 20, 1907, 34 Stat. 898.

The Circuit Court of Appeals for the Ninth Circuit affirmed the judgment of the District Court, sustaining a general demurrer to the second amended complaint and the case is here for review on certiorari.

The complaint is in nineteen separate counts in identical form and each relating to the employment of a single man. The essential allegations of each count, with a difference only in name of the man employed, are as follows:

That in 1913 the three defendant corporations were

operators of the British steamship "Bessie Dollar," and also of the American steamship "Mackinaw," and that the defendant Abernethy was the master of the former; that when the "Bessie Dollar" was in the port of Shanghai, China, the defendants formed the design of procuring a crew of alien laborers to be transferred to the "Mackinaw" at San Francisco, and to that end, although the "Bessie Dollar" had a full crew of officers and men, they procured one Dung Pau to sign shipping articles as a "purported seaman" for service on her as follows, viz:

"On voyages from Shanghai to San Francisco, there to join the S. S. 'Mackinaw,' or any other vessel, within the limits of 70 degrees north and 70 degrees south latitude, trading to and from as may be required, and back to Shanghai, to be discharged with consent of local authorities. Term of service not to exceed two years. The master has the option to transfer any or all of the within mentioned persons to any other British or Foreign ship bound to Shanghai in the same capacity and at the same rate of wages."

It is also alleged that Pau "worked as a seaman" on the voyage to San Francisco, and on arrival there was discharged from the "Bessie Dollar," and that on the same day, pursuant to the design formed in Shanghai, he signed shipping articles before the United States Shipping Commissioner for the Port of San Francisco for a voyage on the "Mackinaw" as follows:

"From San Francisco, Cal., to Shanghai, China, and such other Asiatic Ports as the master may direct, via Grays Harbor, Seattle, Wash., and such other ports on the Pacific Coast as the master may direct; final port of discharge shall be Shanghai, China."

And, finally, it is averred that, pursuant to the second contract, Pau worked "as a seaman" on board the "Mackinaw" in the Port of San Francisco for some days, and on the voyage from San Francisco to Grays Harbor,

Washington, and at Grays Harbor until the time of the commencement of this action.

The employment of the man to serve as a *bona fide* seaman on the "Mackinaw" is not questioned, and the allegations of the complaint negative any suspicion that the employment of him in China was a subterfuge adopted for the purpose of unlawfully securing his entry into the United States.

Basing his right upon the allegations of the complaint, which we have thus epitomized, the claim of the petitioner is, that by employing and bringing an alien laborer as a seaman to San Francisco, in the manner described, for the purpose of shipping him, followed by his actually being shipped, as a seaman on board a vessel of American registry, the defendants violated the Act of Congress of February 20, 1907, 34 Stat. 898.

The argument in support of this claim is that the seaman, described in each count of the complaint, was an alien contract laborer; that the steamship "Mackinaw" was a part of the territory of the United States, and that therefore the contracting to bring such alien to San Francisco and to there employ him upon such a vessel was to knowingly assist and encourage the migration of an alien contract laborer into the United States, for the purpose of having him perform labor therein, in violation of the fourth and fifth sections of the act.

The validity of this claim, and of the argument in support of it, calls for the construction of three short provisions of two statutes.

Section 2 of the Act of 1907, as amended in 1910 (36 Stat. 263), furnishes this definition of "contract laborers," which must be read into §§ 4 and 5 of the Act of 1907:

"Persons . . . who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written

or printed, expressed or implied, to perform labor in this country of any kind, skilled or unskilled."

Section 4 makes it a misdemeanor for any corporation "in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States."

Section 5 imposes severe penalties for every violation of the act "by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States."

Thus a contract laborer is one who under the conditions described in the first of these statutes comes "*to perform labor in this country,*" and the penalties denounced by the sections of the other act are against persons who knowingly assist or induce the importation or migration of such laborer "*into the United States.*"

The purpose of this alien labor legislation was declared by this court almost thirty years ago, in *Holy Trinity Church* v. *United States,* 143 U. S. 457, to be, to arrest the bringing of an ignorant, servile class of foreign laborers into the United States, under contract to work at a low rate of wages, and thus reduce other laborers engaged in like occupations to the level of the assisted immigrant.

Having these terms of the statutes and this history in mind, can it with reason be said that the men shipped on the "Mackinaw" as "seamen" were "laborers," and that when employed upon that vessel in foreign commerce they were performing labor "in this country" within the meaning of the acts?

In familiar speech a "seaman" may be called a "sailor" or a "mariner," but he is never called a "laborer," although he doubtless performs labor when assisting in the care and management of his ship; and a "seaman" is defined in the United States statutes applicable to "Merchant Seamen," as being, any person (masters and appren-

tices excepted) who shall be employed to serve in any capacity on board a vessel, Rev. Stats., § 4612. In the shipping articles, which the United States law requires shall be signed by members of the crews of ships of American registry engaged in foreign commerce, the men are designated as "seamen" or "mariners." Thus, neither in popular nor in techinical legal language would the men employed on the "Mackinaw" be called or classed as "laborers," and such seamen are not brought "into this country" to enter into competition with the labor of its inhabitants, but they come to our shores only to sail away again in foreign commerce on the ship which brings them or on another, as soon as employment can be obtained.

Equally unallowable is the contention that a ship of American registry engaged in foreign commerce is a part of the territory of the United States in such a sense that men employed on it can be said to be laboring "in the United States" or "performing labor in this country." It is, of course, true that for the purposes of jurisdiction a ship, even on the high seas, is often said to be a part of the territory of the nation whose flag it flies. But in the physical sense this expression is obviously figurative (International Law Digest, Moore, vol. I, § 174), and to expand the doctrine to the extent of treating seamen employed on such a ship as working in the country of its registry is quite impossible. Thus the seamen employed on the "Mackinaw" were not within either the spirit or the letter of the law on which the petitioner bases his action and in any point of view his contention is fanciful and unsound and must be denied.

In the result thus reached we are adopting the construction given to another section of this Act of Congress of 1907 in *Taylor* v. *United States*, 207 U. S. 120, and we are approving the construction placed upon the sections we are here considering of the act, and upon earlier acts

relating to the immigration of alien laborers, in the long-standing decisions of many lower courts and of the Department of Justice, in all of which it is held that seamen employed in foreign commerce cannot be considered alien contract laborers within the terms of the various statutes. *United States* v. *Sandrey,* 48 Fed. Rep. 550; *United States* v. *Burke,* 99 Fed. Rep. 895; *Moffitt* v. *United States,* 128 Fed. Rep. 375; *United States* v. *Jamieson,* 185 Fed. Rep. 165; Immigration—Deserting Seamen—23 Opinions of the Attorney General, 521; Chinese Seamen—Transfer of Crew—Alien Laborers, 24 Opinions of the Attorney General, 553. This construction of the act has also long been applied by the Department of Labor in its practical administration of the law. See Immigration Rules 1911, No. 10, Subdivision 1, (a), (c), and (d); subdivision 3.

The fact that the aliens in this case were Chinese subjects is without significance. The suit is to enforce the highly penal provisions of acts of Congress which apply to all alien contract laborers without regard to their origin or nationality.

It results that the judgment of the Court of Appeals must be

*Affirmed.*