INTERNATIONAL MERCANTILE MARINE v. STUART, Acting Collector of Customs, et al.

UNITED AMERICAN LINES v. SAME.

(District Court, S. D. New York. October 26, 1922.)

Intoxicating liquors ⬅147(1)—Prohibition Act applies to ships of American registry at sea.

A ship of American registry at sea or within a foreign port is within the scope of the Eighteenth Amendment and of National Prohibition Act, tit. 2, § 3, as supplemented by Act Nov. 23, 1921, § 3.

In Equity. Suits by the International Mercantile Marine and by the United American Lines against Henry C. Stuart, Acting Collector of Customs for the port of New York, and others. On motions to dismiss amended bills. Granted.

Cletus Keating and John M. Woolsey, both of New York City, for plaintiff International Mercantile Marine.

Reid L. Carr, of New York City, for plaintiff United American Lines.

William Hayward, U. S. Atty., and John Holley Clark, Jr., Asst U. S. Atty., both of New York City, for defendants.

LEARNED HAND, District Judge. The plaintiffs (the American Lines) have now amended their bills so as to allege that the District Attorney for the Southern district of New York has threatened to prosecute them for sales made on shipboard at sea upon ships of American registry. Therefore the question is raised which I declined to consider in my original opinion (in Cunard S. S. Co. v. Mellon, 284 Fed. 890), and its decision has become necessary.

The question so raised is altogether different from that discussed before. No difficulty arises from the character of the act itself. The plaintiffs sell liquors on the high seas, or dispense them to passengers.

The only question is of the place where this occurs; i. e., on board a ship of American registry outside the boundaries of the United States. Is that a place covered by the Eighteenth Amendment? I may in the first place lay aside any question of congressional intent. National Prohibition Act, tit. 2, § 3 (41 Stat. 308), alone would have been enough, as I have already interpreted it, to cover all places where the amendment could operate. However, I am not left in this matter to section 3 alone. Section 3 of the supplemental act passed November 23, 1921 (42 Stat. 222), leaves no doubt of the intent of Congress. By this it was enacted that the original act should "apply not only to the United States but to all territory subject to its jurisdiction"—almost exactly the words[1] used in the amendment itself. Whatever doubt there might be—and it seems to me that there was none—of the meaning of the original act, it is certainly laid by this section of the later.

It is, however, argued that there is no provision in Prohibition Enforcement Act, tit. 2, under which sales at sea could be prosecuted. The penalties for sales of liquors are provided in section 29 of the act, and are general in their character. They do not specify where the prosecution shall take place or any of its procedure. This is quite natural, since all such matters are provided for in the statutes of the United States. By Revised Statutes, § 730 (Comp. St. § 1023), it is enacted that:

"The trial of all offenses committed upon the high seas * * * shall be in the district where the offender is found, or into which he is first brought."

On its face this would cover a sale of liquor upon a ship at sea, if that were in fact a crime. I can see no reason to limit its scope to crimes such as are created by chapter 12 of the Criminal Code (Comp. St. §§ 10463–10483), and are there described as crimes on the high seas. If Congress, having power to make an act done at sea criminal, does so, it is none the less a crime committed at sea because it is not described as such. And so there seems to me nothing in this point, once it appears that the purpose was to make all sections of the act apply as generally as the amendment allowed.

Therefore the question becomes a straight interpretation of the amendment itself. Does it cover American ships on the high seas? The plaintiffs argue that nothing is specified as to ships; that it is only by a fiction (and that, too, one which does not universally apply) that an American ship may be called a part of the territory of the United States; that in dealing with section 3 of article 4 of the Constitution the word "territory" has been defined as "lands"; and that the limitations upon the power of Congress have been held not to apply to territories until they have been extended by Congress. Downes v. Bidwell, 182 U. S. 244, 278, 21 Sup. Ct. 770, 45 L. Ed. 1088; Dorr v. U. S., 195 U. S. 138, 24 Sup. Ct. 808, 49 L. Ed. 128, 1 Ann. Cas. 697; Hawaii v. Mankichi, 190 U. S. 197, 23 Sup. Ct. 787, 47 L. Ed. 1016.

It is quite true that the amendment does not mention ship; nor does it mention waters or islands. But a Constitution is not a deed; its in-

[1] The amendment reads: "The jurisdiction thereof."

tent is not exhausted by its details, but incorporated in its objects. The question is, not what it specifies, but what it wills. It is also true that it is a fiction to call a ship a part of the territory of the flag state, although for some purposes it is so treated.[2]  But, as Lord Blackburn said in Reg. v. Anderson, L. R. 1 Crown. Cas. Res. 161, 169, it has been called such in countless cases, and that is important when one is interpreting legal words, because, though fictions may be only the disguises of the law before logic, they are parts of its wardrobe for all that. While it may be—and I expect it is—only a coincidence that a ship conventionally falls within the words so used in the amendment, it is therefore no answer to argue that it does so through a legal fiction.

Second, the plaintiffs overpress a chance phrase in U. S. v. Gratiot, 14 Pet. 526, 537, 10 L. Ed. 573. In speaking of section 3 of article 4, Thompson, J., said that "territory" was "equivalent to lands"; hence the plaintiffs believe that "territory" in other parts of the Constitution can only mean lands. Indeed, "lands" might properly enough include waters, and, if it did not, the reasoning would deprive the United States of jurisdiction over the bays and waters of Alaska, for example. However, I do not wish to rest on any such verbal dialectic. It is, of course, fair to construe the Constitution as a whole and by cross-reference; yet the same word need not always mean the same thing. The Eighteenth Amendment certainly includes, under "territory subject to the jurisdiction" of the United States, all the "territory" covered by section 3 of article 4, but it may include more as well. It was, I think, equivalent to the phrase "territorial jurisdiction," and it is not unlikely that the currency of that phrase influenced the substitution of "territory" for "place" in the Thirteenth Amendment, a chance in which I cannot see any significance.

Either phrase means to include all subjects of the state's power, and the verbal difficulties touching ships arise, I suspect, from a confusion which goes deeper than at once appears. According to modern notions, the jurisdiction—i. e., the power to do as it wills—of a state is limited by geographical boundaries. But it has been so only recently; until at least the sixteenth century sovereignty was personal, and allegiance was the basis of what we should now call jurisdiction. The seas admit of no boundaries; they are free to all, and upon them territorial jurisdiction is anomalous. Yet a ship has by a curious persistence retained from very ancient times a fictitious personality, more perhaps in our law than elsewhere. The China, 7 Wall. 53, 19 L. Ed. 67; The Barnstable, 181 U. S. 464, 467, 468, 21 Sup. Ct. 684, 45 L.

[2] Oppenheim, International Law, vol. 1, "Peace," § 172, says: "Merchantmen on the high seas are for some points treated as though they were floating parts of the territory of the state under whose flag they legitimately sail." Again, in more specific language (section 264): "Private vessels are only considered as though they were floating portions of the flag state in so far as they remain whilst on the open sea in principle under the exclusive jurisdiction of the flag state. Thus the birth of a child, a will or business contract made, or a crime committed on board ship. and the like, are considered as happening on the territory, and therefore under the territorial supremacy, of the flag state. But, although they appear in this respect as though they were, private vessels are in fact not floating portions of the flag state."

Ed. 954; The Eugene F. Moran, 212 U. S. 466, 474, 29 Sup. Ct. 339, 53 L. Ed. 600.

To attribute, therefore, a fictitious personal allegiance to a ship was natural, and such in effect she has, even to the extent of subjecting to jurisdiction the nationals of another state. In re Ross, 140 U. S. 453, 11 Sup. Ct. 897, 35 L. Ed. 581. It was equally natural, nevertheless, for the law to insist upon its more modern territorial category, so as to hold its old wine in new bottles, and to keep that face of consistency which is so important to its prestige. This I believe may be the reason for the fiction which the plaintiffs decry, and this makes it proper to include within such phrases as these a subject of power which cannot with any propriety be classified territorially.

Nor does the plaintiff's final argument fare better. Cases like Downes v. Bidwell, supra, Dorr v. U. S., supra, and Hawaii v. Mankichi, supra, have no application. They dealt with limitations on a delegated power of Congress, which it must extend to the territories before it will apply. In re Ross, supra, was like them; it dealt with the right of trial by jury in a consular court. But the Eighteenth Amendment is not a limitation upon the powers of Congress; it is not even a a new power conferred. It is a "police" regulation, emanating directly from the sovereign, legislating in person and not by deputy. As such it is self-executory, qua prohibition (National Prohibition Cases, 253 U. S. 350, 386, 40 Sup. Ct. 486, 588, 64 L. Ed. 946, "sixth conclusion"), and needs no extension by Congress. For its effective enforcement statutes must indeed be passed, but it extends to what it covers ex proprio vigore.

However, the form of the amendment answers the argument. In 1920 the United States had all been organized into states, and "territory," which meant something, could only mean possessions acquired by conquest or purchase. To these the amendment extended by its own terms, and the question can only be what those terms mean. If they include ships of American registry, these are within it by the very language; if they do not, Congress cannot extend it to them. Ships are not in a third class. But perhaps the easiest answer is that, if Congress must act, it has acted, as I have already said. Nor is the exemption of the Canal Zone material. Congress has indeed shown that it supposed it could exclude certain transportation from the amendment and perhaps Congress is right. Even so, no inference can be made that it thought the amendment did not apply before it had acted, and, if it could, with all deference, the supposition would be an error.

Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 38 Sup. Ct. 28, 62 L. Ed. 189, seems indeed a case for the plaintiffs, and so it is, if some of the language be read without care. But in that case, while the statute considered was as broad as the amendment, the facts were quite different. The question was whether the ship had assisted in the migration or importation into the United States of a contract laborer, that of a person who was to "perform labor in this country." The court held, first, that a seaman was not a laborer; and, second, that on a ship he was not employed to "perform labor in this country." Now, clearly "this country" is a different phrase from "territory subject to

the jurisdiction of the United States." Granting that, when he was assisted to sign on, he was "imported" into the United States, a very doubtful concession at best, he was certainly not laboring in the country when he helped work the ship. The language of Mr. Justice Clarke (245 U. S. on page 127, 38 Sup. Ct. 28, 62 L. Ed. 189), on which so much stress is put, is carefully guarded; it says only that a ship is not territory in the sense of that statute, especially agreeing that for purposes of jurisdiction it often is. No argument can be drawn from so limited a statute to a comprehensive amendment such as that at bar.

So much, then, for verbal discussion. The natural meaning of the words includes all subjects over which the United States has jurisdiction. As for implications, I need add nothing to what I have already said in my first opinion. It would be a curious thing if a country, professing under its fundamental law to forbid the use of intoxicants, were to allow them without stint upon ships that sailed under its flag. The only distinction pressed is the disastrous consequences to an American merchant marine, if of all ships at sea ours alone are within this ban. In the first place, the discrimination applies only to passenger vessels, which are a small part of any merchant marine. The whole argument is, however, misconceived. The Eighteenth Amendment involved the destruction at a blow of property values far greater than that of the whole passenger fleet. The motives which directed it disregarded ordinary commercial interests; it was a reform based upon the belief that the use of alcohol was one of the great evils of modern life, against whose utter extirpation no present rights of property might stand. National Prohibition Cases, supra, tenth conclusion. And while a merchant marine may be thought to have a national importance quite independent of the property involved in it, a court may not imply exceptions in the language of a Constitution, based upon its estimate of the relative advantages of what it will realize and what it will destroy.

I conclude, therefore, that a ship of American registry at sea or within a foreign port is within the scope of the amendment and of section 3, and that the bills must be dismissed. The International Mercantile Marine sails from the port of Antwerp. By Belgian law a certain ration of wine is prescribed for all passengers, without which clearance will be denied. Pending the appeal, and in addition to the stays given in the other cases, the District Attorney will be stayed from undertaking any prosecution against that plaintiff because of compliance with the Belgian law in that regard. This does not apply to eastbound voyages. I see no reason why the bond should be larger on this account, but I will hear the District Attorney on that point if he wishes.

Bills dismissed, with costs; injunctions as stated pending appeals. Settle orders on notice.