### NEW YORK & CUBA MAIL. S. S. CO. v. UNITED STATES.*

(Circuit Court of Appeals, Second Circuit. February 18, 1924.)

#### No. 231.

1. **Seamen ⬤�ký11—Statute requiring treatment of diseased alien seaman not applicable to aliens employed on American ships.**

   Act Dec. 26, 1920 (Comp. St. Ann. Supp. 1923, § 4289¼sss), providing that "alien seamen," found on arrival in ports of the United States to be afflicted with certain diseases, shall be placed in hospitals and treated at the expense of owner, consignee, or master of the vessel, has no application to citizens of other countries employed on United States ships, and applies only to seamen of foreign ships.

2. **Seamen ⬤➫11—Regarded as of nationality of ship.**

   Seamen are regarded as of the nationality of the ship on which they are employed.

3. **Statutes ⬤➫217—Report of committee regarded as expression of legislative intent, where meaning obscure.**

   Where a report of a committee is supplemented by the spokesman of the House committee, who had the bill in charge when it was under consideration by the House, it is regarded as an expression of the legislative intent, in a case where the meaning of the statute may be obscure.

4. **Aliens ⬤➫40—In absence of express provisions, immigration laws do not apply to seamen; "immigrants."**

   Seamen are not "immigrants," and the immigration laws do not apply to them, in the absence of express provisions to that effect.

   [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Immigrant.]

---

⬤➫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari granted 44 Sup. Ct. 638, 68 L. Ed. —.

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States against the New York & Cuba Mail Steamship Company to recover damages and medical expenses of a seaman. Judgment for plaintiff, and defendant brings error. Reversed.

James A. Hatch and Rumsey & Morgan, all of New York City (Mark W. Maclay and John Tilney Carpenter, both of New York City, of counsel), for plaintiff in error.

William Hayward, U. S. Atty., of New York City (Morris Streusand, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. [1] This action is brought to recover the expense of maintaining and treating a seaman of the steamship Yucatan, which was registered as a United States merchant vessel and was engaged in carrying a general cargo. It is based on the Act of December 26, 1920, known as "An act to provide for the treatment in the hospital of diseased alien seamen." 41 Stat. 1082 (Comp. St. Ann. Supp. 1923, § 4289¼sss). The seaman was a citizen of Chile, and signed articles for a voyage from New York to Cuba, West Indies, Gulf of Mexico, and return. The vessel returned on July 18, 1921, at which time the seaman, on order of the Commissioner of Immigration, was delivered to Ellis Island because he was found to be infected with a venereal disease. He was treated at Ellis Island until August 25, 1921, and discharged as cured. The writ of error sued out seeks to review a judgment entered after a motion denying an application to dismiss the complaint. The facts are undisputed. The act in question provides:

"An act to provide for the treatment in hospital of diseased alien seamen.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that alien seamen found on arrival in ports of the United States to be afflicted with any of the disabilities or diseases mentioned in section 35 of the Act of February 5, 1917, entitled 'An Act to regulate the immigration of aliens to, and the residence of aliens in, the United States,' shall be placed in a hospital designated by the immigration official in charge at the port of arrival and treated, all expenses connected therewith, including burial in the event of death, to be borne by the owner, agent, consignee, or master of the vessel, and not to be deducted from the seaman's wages, and no such vessel shall be granted clearance until such expenses are paid or their payment appropriately guaranteed and the collector of customs so notified by the immigration official in charge: Provided, that alien seamen suspected of being afflicted with any such disability or disease may be removed from the vessel on which they arrive to an immigration station or other appropriate place for such observation as will enable the examining surgeons definitely to determine whether or not they are so afflicted, all expenses connected therewith to be borne in the manner herein before prescribed: Provided further, that in cases in which it shall appear to the satisfaction of the immigration official in charge that it will not be possible within a reasonable time to effect a cure, the return of the alien seamen shall be enforced on or at the expense of the vessel on which they came, upon such conditions as the Commissioner General of Immigration, with the approval of the Secretary of Labor, shall prescribe, to insure that

the aliens shall be properly cared for and protected, and that the spread of contagion shall be guarded against."

The claim of the plaintiff in error is that the enforced obligation of the statute is not applicable to seamen of a ship of the United States registry, even though the seaman in the service of such ship may have been born in or was a citizen of another nation. Its argument is that "alien seamen," as used in the act, applies to seamen on foreign vessels only because of the settled maritime law that seamen partake of the nationality of the vessel on which they serve.

[2] We think the statute should be read and applied in accordance with the settled maritime law. That seamen of a vessel are regarded as of the nationality of the ship is now well established. In Re Ross, 140 U. S. 453, 11 Sup. Ct. 897, 35 L. Ed. 581, the rule is stated that the vessel being American is evidence that the seamen on board are. In that case the court said:

"This rule, that the vessel being American is evidence that the seamen on board are such, is now an established doctrine of this country; and in support of it there is with the American people no diversity of opinion and can be no division of action. We are satisfied that the true rule of construction in the present case was adopted by the Department of State in the correspondence with the English government, and that the action of the consular tribunal in taking jurisdiction of the prisoner Ross, though an English subject, for the offense committed, was authorized. While he was an enlisted seaman on the American vessel, which floated the American flag, he was, within the meaning of the statute and the treaty, an American, under the protection and subject to the laws of the United States equally with the seaman who was native-born."

In Matthews v. Offley (1837) Fed. Cas. No. 9,290, in a suit to enforce a penalty against a master for failing to comply with the orders of the consul in respect of a British subject who died while on a merchant vessel of the United States, under sections 4577, 4578 of the Revised Statutes (Comp. St. §§ 8368, 8369), a finding as to whether the seaman came within the provisions of the Act of February 28, 1803 (2 Stat. 204, c. 9), was necessary. Justice Story held that foreigners while employed as seamen on merchant vessels of the United States "are mariners and seamen of the United States within the language and policy of the act of 1803." This principle has been followed by the Department of State in administering statutory provisions relating to seamen through the consular service. The Digest of Consular Regulations, p. 17. Consular Regulation No. 199 defines American seamen for the purposes of the administration of the laws relating to discharge, wages, and extra wages of seamen, and refers as such to foreigners regularly shipped on American vessels from ports of the United States. More recent cases have held to the same effect. The Laura M. Lunt (D. C.) 170 Fed. 204; The Blakeley (D. C.) 234 Fed. 959. An American citizen, while employed as a seaman on a foreign ship, is regarded as a seaman of that ship's nationality, and he is denied the benefits and released from the obligations of a citizen of the United States while so employed. Rainey v. N. Y. & P. S. S. Co., 216 Fed. 449, 132 C. C. A. 509, L. R. A. 1916A, 1149. And an American citizen who shipped on a Norwegian vessel at an American port was held to be, for the time so employed, entitled only to the rights granted by the laws of Norway,

and his claim for damages fell within the exclusive jurisdiction of the Norwegian consul in accordance with the terms of a treaty between the United States and Norway. The Marie (D. C.) 49 Fed. 286.

The statute should be given no broader construction than its language and clear intent require. Steam Engine Co. v. Hubbard, 101 U. S. 188, 25 L. Ed. 786; Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554; 28 L. Ed. 1038. The phrase used in the statute is "alien seamen." It is not aliens employed on board any vessel arriving in the United States or seamen who are aliens. In the absence of plain language making the statute applicable to a foreign seaman employed on a United States vessel, it is clear that it was not intended by Congress to depart from the settled understanding of alien or foreign seamen as understood in the maritime law. Congress can legislate to impose liability on foreign and United States shipowners, although, if applicable to United States vessels, the instant legislation here imposed an obligation of doubtful constitutionality. Legislation of this character has universally exempted the employer from liability resulting from willful misconduct on the part of the employé. Missouri Pacific Ry. Co. v. Castle, 224 U. S. 541, 32 Sup. Ct. 606, 56 L. Ed. 875; N. Y. Central R. Co. v. White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Hawkins v. Bleakly, 243 U. S. 210, 37 Sup. Ct. 255, 61 L. Ed. 678, Ann. Cas. 1917D, 637; Mountain Timber Co. v. State of Washington, 243 U. S. 219, 37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642; Arizona Employers' Liability Cases, 250 U. S. 400, 39 Sup. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537.

It will be observed that, in cases in which it shall appear to the satisfaction of the immigration official in charge that it will not be possible, within a reasonable time, to effect a cure, the return of the alien seaman is enforced on or at the expense of the vessel on which he came. And this statute presents the question—returned where? Castner, Curran & Bullitt v. Hamilton (D. C.) 275 Fed. 203. In the case at bar, the seaman signed on this United States vessel for a voyage to Cuba and return to New York. If he could not have been cured within a reasonable time under the construction which is contended for by a defendant in error, the plaintiff in error's obligation would have been to return him to the port of departure—where the ship first received him on board—which would be an absurdity, because he was already there when confined with his sickness. It would not be expected that the shipowner should be required to return a sick or diseased seaman to the country from which he originally came, and the provision must mean return to the port from which he came or shipped. This would have little meaning as applied to an alien sailor shipping on a United States vessel at a United States port, because the obligation would be to return him to the place where he is objectionable. It would be unreasonable to require the vessel which brought such a seaman to a United States port to take him back to some port of the nation of which he is a citizen. Such provision might well apply to a foreign vessel.

[3] We cannot hold that Congress intended that a United States shipowner, engaged in foreign trade, be required to return a diseased

alien to a foreign country from which he originally came, and it is less likely that it was intended to require this of a United States vessel engaged in coastwise service. If we regard the statute as meaning an alien seaman employed on a United States vessel as entitled to this benefit, it would cast a burden of an absurd character without reason therefor. That Congress had no such intention finds some support in the debates in Congress.[1] Where a report of a committee is supplemented by the spokesman of the House committee who has had the bill in charge when it was under consideration by the House, it is regarded as an expression of the legislative intent in a case where the meaning of the statute may be obscure. Duplex Printing Press Co. v. Deering, 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196; Binns v. United States, 194 U. S. 486, 24 Sup. Ct. 816, 48 L. Ed. 1087; United States v. St. Paul, Minn. & Manitoba Ry. Co., 247 U. S. 310, 38 Sup. Ct. 525, 62 L. Ed. 1130.

[4] The act may not be considered as part of the general immigration law. Franco v. Seas Shipping Corp. (D. C.) 272 Fed. 542. Seamen

---

[1] "Mr. Johnson of Washington: Mr. Speaker, this bill was passed by the House on July 30, 1919. It is a necessary measure, in my opinion, growing out of certain conditions in the Department of Labor connected with the examination of sick sailors, in order that part of the expense of their maintenance shall be borne by the owners of foreign ships coming to these ports bringing the sailors.

"Mr. Hicks: Mr. Speaker, will the gentleman yield?

"The Speaker pro tempore: Does the gentleman from Washington yield to the gentleman from New York?

"Mr. Johnson of Washington: Yes; but I thought I would make a brief statement first.

"Mr. Hicks: I would be glad if the gentleman would make that statement, because I am free to confess that I do not know what is the purpose of this bill, and what these amendments do.

"Mr. Johnson of Washington: I will try to explain them. Let me read the bill. * * *

"(The bill was then read.)

"Mr. Hicks: Does this provide that the expense shall be borne as it is now? Does the bill put the expense on the shipowner instead of on the Marine Hospital Service?

"Mr. Johnson of Washington: This provides that the sick alien seaman shall remain in the charge of the immigration officials, and not permitted to step out if they are sick, and if incurable must go back in the vessel on which they shipped.

"Mr. Hicks: In other words, they are maintained at the expense of the shipowner until they are given a clean bill of health and discharged?

"Mr. Johnson of Washington: Yes; discharged from the hospital. That is the whole purpose of the bill. It will result in a saving of money and will put the sick sailor in charge of the Public Health officials.

　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

"Mr. Focht: Does that include both foreign ships and American ships?

"Mr. Johnson of Washington: American ships take care of their sick seamen.

"Mr. Focht: But under the provisions of this bill both will be included?

"Mr. Johnson of Washington: No; this bill refers to alien seamen.

　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

"Mr. Johnson of Washington: * * * This is a bill made necessary after an attempt to carry out these things, in order to save the United States anywhere from $200,000 annually on up, according to the number of sick sailors from alien ships. That is all there is to it."

are not immigrants, and the immigration laws do not apply to seamen, in the absence of express provisions to that effect. Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 38 Sup. Ct. 28, 62 L. Ed. 189; Taylor v. United States, 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130. Congress did not declare either in the title or the text of the Act of December 26, 1920, that the statute was an immigration measure. In passing what Congress intended as immigration measures in other instances, it has defined the character of the legislation as such in the title. Indeed, we think the act differs from the Immigration Act in respect of persons described and the conditions of liability imposed. We conclude that the statute in question has no application to citizens of other countries while employed on United States ships, and is intended to apply only to seamen of foreign ships.

Decree reversed.