LAM MOW v. NAGLE, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit.
February 20, 1928.

No. 5245.

1. Citizens ⬀3—Child born of Chinese parents on American merchant vessel on high seas is not citizen; "in the United States" (Const. Amend. 14, § 1).

Child born on American merchant vessel on high seas of Chinese parents, who were subjects of China, but domiciled in United States, to which they were returning from China, held not a citizen of the United States; such birth not being "in the United States," within Const. Amend. 14, § 1.

2. Aliens ⬀3—Holding that child born of Chinese parents on American merchant vessel on high seas is not citizen does not deprive him of political status (Const. Amend. 14, § 1).

Holding that child born of Chinese parents on American merchant vessel on high seas is not United States citizen, under Const. Amend. 14, § 1, does not produce absurd and unjust result as depriving him of political status, as he was born in allegiance to, and under protection of, Chinese government, with only such temporary qualifications of rights and obligations of that sovereignty as are recognized by law of nations, while nationals of one country are being carried on ships of another on high seas.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Petition by Lam Mow, alias Lam Korea, for a writ of habeas corpus to John D. Nagle, as Commissioner of Immigration for the port of San Francisco. From a judgment dismissing the petition (19 F.[2d] 951), petitioner appeals. Affirmed.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This appeal is from a judgment dismissing a petition for a writ of habeas corpus by one Lam Mow or Lam Korea, a person of the Chinese race who seeks to prevent the enforcement of an order of the Department of Labor excluding him from admission to the United States upon the alleged ground of his alienage. There is no dispute about the facts, and the single question for consideration is whether a child born on a merchant vessel of American registry, on the high seas, of parents of the Chinese race and subjects of China, but domiciled in the United States, to which country they are returning from China at the time of the child's birth, is a citizen of the United States.

[1] The petitioner's contention is that a child so born comes within the scope of section 1 of article 14 of the Constitution of the United States which provides that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States. * * *" The meaning of this provision and the general subject of citizenship, both by birth and by naturalization, are elaborately discussed in United States v. Wong Kim Ark, 169 U. S. 649, 18 S. Ct. 456, 42 L. Ed. 890, where it is definitely held, in effect, that if the petitioner here had been born within an area of land over which the United States exercises dominion as a sovereign power, he would be a citizen though of alien parentage. The real point in issue is therefore limited to the inquiry whether such a birth upon an American merchant vessel at sea is birth "in the United States" within the meaning of the Constitution.

Undoubtedly petitioner's theory that a merchant ship is to be considered a part of the territory of the country under whose flag she sails finds a measure of support in statements made in some of the decided cases and in texts upon international law. But no one of the decisions brought to our attention involved the precise question here presented, and the general statement, or its equivalent, that a vessel upon the high seas is deemed to be a part of the territory of the nation whose flag she flies, must be understood as having a qualified or figurative meaning. Manifestly in a physical sense that must be true. In view of recent decisions of the Supreme Court, elaboration upon this point is thought to be unnecessary. Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 127, 38 S. Ct. 28, 62 L. Ed. 189; Cunard S. S. Co. v. Mellon, 262 U. S. 100, 122, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306. In the latter case the court had under consideration the territorial coverage of the clause "United States and all territories subject to the jurisdiction thereof" in the Eighteenth Amendment. Speaking of defendants' contention that by this language the Prohibition Law extends to domestic merchant ships outside the waters of the United States, the court said:

"In support of their contention the defendants refer to the statement sometimes made that a merchant ship is a part of the territory of the country whose flag she flies. But this, as has been aptly observed, is a figure of speech, a metaphor. Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 127, 38 S. Ct. 28, 62 L. Ed. 189; In re Ross, 140 U. S. 453, 464, 11 S. Ct. 897, 35 L. Ed. 581; 1 Moore, International Law Digest, § 174; Westlake, International Law (2d Ed.) p. 264; Hall, International Law (7th Ed., Higgins) sec. 76; Manning, Law of Nations (Amos) p. 276; Piggott, Nationality, pt. II, p. 13. The jurisdiction which it is intended to describe arises out of the nationality of the ship, as established by her domicile, registry and use of the flag, and partakes more of the characteristics of personal than of territorial sovereignty. See The Hamilton, 207 U. S. 398, 403, 28 S. Ct. 133, 52 L. Ed. 264; American Banana Co. v. United Fruit Co., 213 U. S. 347, 355, 29 S. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047; 1 Oppenheim, International Law (3d Ed.) §§ 123–125, 128. It is chiefly applicable to ships on the high seas, where there is no territorial sovereign; and as respects ships in foreign territorial waters it has little application beyond what is affirmatively or tacitly permitted by the local sovereign. 2 Moore, International Law Digest, §§ 204, 205; Twiss, Law of Nations (2d Ed.) § 166; Woolsey, International Law (6th Ed.) § 58; 1 Oppenheim, International Law (3d Ed.) §§ 128, 146, 260. The de-

fendants further contend that the Amendment covers foreign merchant ships when within the territorial waters of the United States. Of course, if it were true that a ship is a part of the territory of the country whose flag she carries, the contention would fail. But, as that is a fiction, we think the contention is right."

And it was further said:

"Various meanings are sought to be attributed to the term 'territory' in the phrase 'the United States and all territory subject to the jurisdiction thereof.' We are of opinion that it means the regional areas—of land and adjacent waters—over which the United States claims and exercises dominion and control as a sovereign power. The immediate context and the purport of the entire section show that the term is used in a physical and not a metaphorical sense—that it refers to areas or districts having fixity of location and recognized boundaries. See United States v. Bevans, 3 Wheat. 336, 390, 4 L. Ed. 404. It now is settled in the United States and recognized elsewhere that the territory subject to its jurisdiction includes the land areas under its dominion and control, the ports, harbors, bays and other enclosed arms of the sea along its coast and a marginal belt of the sea extending from the coast line outward a marine league, or three geographic miles [citing cases]. This, we hold, is the territory which the amendment. designates as its field of operation; and the designation is not of a part of this territory, but of 'all' of it."

We find no substantial reason for holding the phrase of the Fourteenth Amendment, "in the United States," was intended to have a wider scope.

[2] It is said upon behalf of the petitioner that under this view we would have an absurd and unjust result in that appellant and others similarly situated would have no political status and would be in the position of a man without a country. But such conclusion does not necessarily follow. In Inglis v. Sailor's Snug Harbor, 3 Pet. 99, 155, 70 L. Ed. 617, Mr. Justice Story said:

"Two things usually concur to create citizenship; First, birth locally within the dominions of the sovereign; and secondly, birth within the protection and obedience, or, in other words, within the ligeance of the sovereign. That is, the party must be born within a place where the sovereign is, at the time, in full possession and exercise of his power, and the party must also, at his birth, derive protection from, and consequently owe obedience or allegiance to, the sovereign,

as such de facto. * * * There are some exceptions, which are founded upon peculiar reasons, and which, indeed, illustrate and confirm the general doctrine. Thus, a person who is born on the ocean is a subject of the prince to whom his parents then owe allegiance; for he is still deemed under the protection of his sovereign, and born in a place where he has dominion in common with all other sovereigns. So the children of an ambassador are held to be subjects of the prince whom he represents, although born under the actual protection and in the dominions of a foreign prince."

And the language was quoted with apparent approval in United States v. Wong Kim Ark, 169 U. S. 649, 659, 18 S. Ct. 456, 42 L. Ed. 890. In that view appellant is not without a country, but was born in allegiance to and under the protection of the Chinese government, with such temporary qualification only of the rights and obligations of that sovereignty as are recognized by the law of nations during the time the nationals of one country are being carried on the ships of another on the high seas. Moreover, if we resort to considerations ab inconvenienti as an aid to construction, we are inclined to think that in a comprehensive view the weight of such argument is against appellant's contention.

The judgment is affirmed.