**AIR LINE STEWARDS AND STEWARDESSES ASSOCIATION, International, Appellant,**

v.

**NORTHWEST AIRLINES, INC.,** Appellee.

Nos. 16059, 16060.

United States Court of Appeals Eighth Circuit.

May 29, 1959.

Rehearing Denied June 26, 1959.

Ruth Weyand, Washington, D. C. (Lee Leibik, Chicago, Ill., and Lee Loevinger, Minneapolis, Minn., were with her on the brief), for appellant.

Henry E. Halladay, Minneapolis, Minn. (Dorsey, Owen, Scott, Barber & Marquart, and Edward J. Schwartzbauer, Minneapolis, Minn., were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

Air Line Stewards and Stewardesses Association, International, hereinafter referred to as the Association, instituted this action by petition to impeach an arbitration award issued in a controversy between employees whom the Association claims to represent and the employer, appellee, Northwest Airlines, Inc.; hereinafter referred to as Northwest. The controversy giving rise to the arbitration award arose out of disagreement between the Association and Northwest over the terms and conditions of employment to govern employees of Northwest who are hired to perform duties as flight service attendants, stewardesses or pursers on the entirely foreign segments of flights between the United States and Japan, Korea, Okinawa, Taiwan, Hongkong or the Philippines. The Association took the position that it was the certified bargaining agent of all persons hired by Northwest within the craft or class of flight service attendants, stewardesses and pursers; that it was willing to admit to full membership Northwest employees within the craft or class and to represent such fairly and nondiscriminatorily, and therefore it had the right and the duty to bargain collectively with Northwest with respect to rates of pay, hours, seniority, and other terms and conditions for such persons. The basic issue is whether or not the Railway Labor Act, 45 U.S.C.A. § 151 et seq., as amended to include common carriers by air engaged in interstate or foreign commerce, 45 U.S.C.A. § 181 et seq., covers the employees of a common carrier by air who are hired outside the United States and its territories and perform services entirely outside the United States and its territories.

The arbitration award which the Association attempted to impeach in this action provided:

"(b) This Agreement covers all flight pursers, flight service attendants and stewardesses in the employ of the Company who are employed and assigned within the continental limits of the United States and its territories, and of employees in such positions when assigned to those segments of the Company's international passenger flights which originate or terminate in the United States and its territories, and, also, of employees in such positions when assigned at the discretion of the Company on other international passenger flights except as specifically limited herein.

"(1) The Company shall have the right to assign foreign nationals to all cabin attendant positions on all international passenger flights operating over all international routes south and west of Japan including but not limited to the routes to and from Japan to points in Korea, Okinawa, Formosa, the Philippine Islands, Hongkong, and to and from any other foreign station that the Company many (may) be certificated to serve, except that one employee covered by this agreement in a classification to be selected by the Company will be assigned to such passenger flights.

"(2) Foreign national cabin attendants assigned to flights under Paragraph (1) of this section will not come within the jurisdiction or scope of this agreement, nor shall any such foreign national employees be covered by nor subject to any provisions of this agreement. * * * "

The District Court considered the contentions of the Association as hereinafter referred to and in a clear and logical opinion, Air Line Stewards and Stewardesses Association, International, v. Northwest Airlines, Inc., D.C.Minn. 1958, 162 F.Supp. 684, held that the Railway Labor Act as applicable to air carriers does not include employees who are crew members on flights between points outside the continental United States and its territories, thus sustain-

ing the award. The Association here seeks reversal of that holding.[1]

As we see the problem, it is solely one of proper interpretation of the jurisdictional applicability of the Railway Labor Act, 45 U.S.C.A. § 151 et seq.

The Railway Labor Act provides, § 151:

"First. The term 'carrier' includes any express company, sleeping-car company, carrier by railroad, *subject to the Interstate Commerce Act,* * * *." (Emphasis supplied.)

And:

"Fifth. *The term 'employee' as used herein includes every person in the service of a carrier* (subject to its continuing authority to supervise and direct the manner of rendition of his service) *who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission* now in effect, and as the same may be amended or interpreted by orders hereafter entered by the Commission pursuant to the authority which is conferred upon it to enter orders amending or interpreting such existing orders: * * *." (Emphasis supplied.)

The Interstate Commerce Act, 49 U.S.C.A. § 1(2), restricts coverage as follows:

"Transportation subject to regulation

"(2) *The provisions of this chapter shall also apply to such transportation of passengers and property and transmission of intelligence, but only insofar as such transportation or transmission takes place within the United States,* * * *." (Emphasis supplied.)

■■■ In 1936 Congress extended the Railway Labor Act to include carriers by air, 45 U.S.C.A. §§ 181–188.

"§ 181. All of the provisions of sections 151, 152, and 154–163 of this title are extended to and shall cover every common carrier by air engaged in interstate or foreign commerce, and every carrier by air transporting mail for or under contract with the United States Government, and every air pilot or other person who performs any work as an employee or subordinate official of such carrier or carriers, subject to its or their continuing authority to supervise and direct the manner of rendition of his service."

"§ 182. *The duties, requirements, penalties, benefits, and privileges* prescribed and established by the provisions of sections 151, 152 and 154–163 *of this title shall apply to said carriers by air and their employees in the same manner and to the same extent as though such carriers and their employees were specifically included within the definition of 'carrier' and 'employee', respectively, in section 151 of this title."* (Emphasis supplied.)

It seems to us inescapable that the Railway Labor Act, which incorporates by reference pertinent provisions of the Interstate Commerce Act, is limited in its territorial scope by 49 U.S.C.A. § 1(2), supra. Sections 181 and 182 extend the provisions of the Railway Labor Act to air carriers and their employees. The legislative history of the act which extended the Railway Labor Act to include air carriers and their employees indicates that it was the intention of the Congress by such amendment to give the same range to employees engaged in air transport as would be invoked by men engaged in railroad employment.

The question of the applicability of the act to employees with respect to air flights between points outside the continental United States and its territories is not raised here for the first

1. Appellant has taken two appeals: **(1)** From the District Court's June 24, 1958, Order that Final Judgment be entered in accordance with the decision of the Board of Arbitration; **(2)** the Final Judgment.

time. The Court of Appeals for the District of Columbia, in Air Line Dispatchers Association v. National Mediation Board, 1951, 89 U.S.App.D.C. 24, 189 F.2d 685, certiorari denied 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641, met the issue squarely and held, 189 F.2d at page 690:

" * * * the Act does not extend to an air carrier and its employees located entirely outside the continental United States and its territories."

The Association claims here that the Air Line Dispatchers case is distinguishable on the facts as well as "wrongly decided". It is pointed out that the carrier in the Air Line Dispatchers case did not conduct flights to or from the continental United States or conduct operations within the continental United States, and that the flight dispatchers performed their work entirely on foreign soil and were not members of the crew of an airplane and did not perform any of their work upon or within any airplane. Such distinguishing factors, however, were not made the basis of the court's decision in the Air Line Dispatchers case. The court there held, without equivocation or exception whatsoever, that the Railway Labor Act as extended to include air carriers was limited to the continental United States and its territories. We agree with the District Court that the Air Line Dispatchers case is in point and persuasive.

■■ Of significance here is a Senate committee's conclusion in 1955 that the Railway Labor Act had been interpreted by the National Mediation Board and the United States Court of Appeals for the District of Columbia not to cover employees based abroad and the Congress' failure to thereafter amend the act so as to include such employees. The committee stated:

"The act as it is presently worded has been interpreted by the National Mediation Board and the courts not to extend to employees of air carriers based outside the continental limits of the United States and its territories. In 1949, the National Mediation Board ruled that title II of the Railway Labor Act does not cover foreign-based employees. The Board's ruling was based on the view that to extend the act to cover employees based abroad would bring this labor legislation into direct conflict with labor laws of foreign countries. In addition, the Board held that to attempt application of the Railway Labor Act in a foreign country, rather than the law of the country, would be a challenge to its national sovereignty to govern within its own boundaries. It was noted that the United States would rightly reject any attempt of a foreign government to apply its labor laws in this country. This determination by the National Mediation Board as to the construction of the present language regarding jurisdiction appearing in section 201 of the Railway Labor Act was later upheld by the District of Columbia Court of Appeals in Air Line Dispatchers Association v. National Mediation Board ([89 U.S.App.D.C. 24] 189 F.2d 685) (1951).

"In addition, it was pointed out in the testimony that an attempt to give extraterritorial effect to the Railway Labor Act would run counter to a long-established doctrine that the labor laws of one country should not be given extraterritorial effect and applied in a foreign country. In order to adopt the amendment proposed, the committee would give our laws an application contrary to the decision of the court mentioned above but also contrary to a long-recognized policy by this country. This would invite the imposition of foreign labor standards upon employees of foreign industry residing in this country.

"The testimony offered was conflicting. *Representatives of the Air Line Dispatchers Association, A. F. of L., argued for the application of*

*the Railway Labor Act to employees based abroad, and the spokesmen for the Airlines Personnel Relations Conference and the Air Transport Association opposed such amendment for the reasons stated above. On the testimony offered the committee would not be justified in making such a sharp departure from long-established American policy as is proposed in this bill."* Sen.Doc. No. 163, 83rd Cong., 2nd Sess. Aviation Study 69–70 (1955). (Emphasis supplied.)

We think the foregoing report persuasive of legislative recognition of the construction of the Act by both the Mediation Board and the Court of Appeals to the effect that the Act is non-extraterritorial and that Congress' failure to amend thereafter as indicating agreement with such construction. See Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 488, 60 S.Ct. 982, 84 L.Ed. 1311.

■ The appellant argues that the Railway Labor Act imposes upon the representative chosen by the majority to represent all members of the craft or class the duty to represent them without discrimination. Steele v. Louisville & Nashville R. Co., 1944, 323 U.S. 192, 202–204, 65 S.Ct. 226, 89 L.Ed. 173. It argues that the application by the Mediation Board and the District Court of a nondiscriminatory law in a manner which discriminates between persons because of citizenship or race violates the Constitution of the United States, citing Yu Cong Eng v. Trinidad, 1926, 271 U.S. 500, 525, 46 S.Ct. 619, 70 L.Ed. 1059. It says that the award of the Mediation Board as upheld by the District Court

"* * * solely on the basis of their lack of citizenship, completely deprives foreign nationals serving under our flag, of their right to have the Association serve as their representative in the interests of securing for them better rates of pay and terms and conditions of employment. It completely excludes foreign nationals from access to the system board of adjustment and representa-

tion by the Association in the handling of grievances. It perpetuates pay differentials to the extent that a foreign national serving as a hostess on the same plane with an American hostess receives less than half as much pay as the American hostess, though both are working together performing exactly the same duties."

We are unable to agree with the appellant. The construed exclusions from coverage under the Railway Labor Act are in no way based upon race, color, citizenship or national origin. Such exclusions are applicable to anyone employed and performing service outside the continental United States and its territories. As viewed by the Mediation Board and the District Court, the Railway Labor Act, as it pertains to common carriers by air, has no application outside the continental United States and its territories. By its terms, it fails to apply to employees who are hired and who perform services completely outside the United States and its territories. We see no necessity for discussing here the constitutionality of an award if such award should have excluded foreign nationals on the basis that they were such. That is not our situation.

■■ The Association also contends:

"Under the principle of the law of the flag which, by treaties with all involved nations, and by accepted international law, governs employment relations on board an airplane, Congress had power to make the Railway Labor Act applicable to all members of crews of American flag airplanes without limitation as to their citizenship, place of domicile, place of contract, or place of flight."

It further argues that because of the law of the flag the application of the Railway Labor Act to employees serving upon American flag airplanes on flights between foreign ports, over foreign territory or over the high seas does not constitute an extraterritorial application of the statute, its position being that:

"Each American-flag airplane is territory of the United States, for

most purposes of law. Each American-flag airplane continues to constitute territory of the United States wherever it goes, whether in flight over the high seas or foreign lands, * * *."

First, we agree that Congress does have the power to make the Railway Labor Act applicable to employees employed on American flag airplanes and who work wholly outside the United States. See United States v. Flores, 1933, 289 U.S. 137, 150, 155 et seq., 53 S.Ct. 580, 77 L.Ed. 1086. The point is that the Congress specifically has not done so. Secondly, as already pointed out, supra, the Interstate Commerce Act, which was incorporated by reference into the Railway Labor Act, definitely limited applicability " * * * only in so far as such transportation or transmission takes place within the United States, * * * " and by Section 182, supra, the Railway Labor Act applies to carriers by air and their employees "in the same manner and to the same extent," which makes it clear that carriers by air and carriers by railroad are covered only to the extent that the commerce or transportation in which they are involved takes place within the United States.

In Cunard S. S. Co. v. Mellon, 1923, 262 U.S. 100, 43 S.Ct. 504, 67 L.Ed. 894, the court was concerned with the applicability of the 18th Amendment and the National Prohibition Act to both foreign and American flag vessels when within the territorial waters of the United States and also with reference to American flag vessels when outside the territorial waters of the United States. The 18th Amendment made its provisions applicable to " * * * the United States and all territories subject to the jurisdiction thereof * * *." The National Prohibition Act, 41 Stat. 305 (1919), as amended 42 Stat. 222 (1921), 27 U.S.C.A. § 2, provided that it " * * * shall apply not only to the United States but to all territory subject to its jurisdiction," which was construed by the Supreme Court to mean that its field coincided with that of the 18th Amendment,

page 127 of 262 U.S., page 509 of 43 S.Ct. Obviously, if the Association's contention here with reference to the law of the flag, its applicability to American flag airplanes, and the latter constituting territory of the United States is correct, then foreign vessels sailing under the flags of foreign countries would be territories of the countries whose flags they flew and would not be subject to the 18th Amendment and the National Prohibition Act, even while they were within the territorial waters of the United States and likewise the 18th Amendment and the National Prohibition Act would cover domestic ships while flying the flag of the United States outside the waters of the United States, whether upon the high seas or in territorial waters of a foreign country. In meeting the question, the Supreme Court said, at page 122 of 262 U.S., at page 507 of 43 S.Ct.:

"Various meanings are sought to be attributed to the term 'territory' in the phrase 'the United States and all territory subject to the jurisdiction thereof.' We are of opinion that it means the regional areas—of land and adjacent waters—over which the United States claims and exercises dominion and control as a sovereign power. The immediate context and the purport of the entire section show that the term is used in a physical and not a metaphorical sense,—that it refers to areas or districts having fixity of location and recognized boundaries. See United States v. Bevans, 3 Wheat. 336, 390, 4 L.Ed. 404.

* * * * * *

"The defendants contend that the Amendment also covers domestic merchant ships outside the waters of the United States, whether on the high seas or in foreign waters. But it does not say so, and what it does say shows, as we have indicated, that it is confined to the physical territory of the United States. In support of their contention the defendants refer to the statement sometimes made that a merchant ship is a

part of the territory of the country whose flag she flies. But this, as has been aptly observed, is a figure of speech, a metaphor. Scharrenberg v. Dollar S. S. Co., 245 U.S. 122, 127, 38 S.Ct. 28, 62 L.Ed. 189; In re Ross, 140 U.S. 453, 464, 11 S.Ct. 897, 35 L.Ed. 581; 1 Moore International Law Digest, § 174; Westlake International Law, 2d ed., p. 264; Hall International Law, 7th ed. (Higgins), § 76; Manning Law of Nations (Amos), p. 276; Piggott Nationality, Pt. II, p. 13. The jurisdiction which it is intended to describe arises out of the nationality of the ship, as established by her domicile registry and use of the flag, and partakes more of the characteristics of personal than of territorial sovereignty. See The Hamilton, 207 U.S. 398, 403, 28 S.Ct. 133, 52 L.Ed. 264; American Banana Co. v. United Fruit Co., 213 U.S. 347, 355, 29 S.Ct. 511, 53 L.Ed. 826; 1 Oppenheim International Law, 3d ed., §§ 123–125, 128. It is chiefly applicable to ships on the high seas, where there is no territorial sovereign; and as respects ships in foreign territorial waters it has little application beyond what is affirmatively or tacitly permitted by the local sovereign. 2 Moore International Law Digest, §§ 204, 205; Twiss Law of Nations, 2d ed., § 166; Woolsey International Law, 6th ed., § 58; 1 Oppenheim International Law, 3d ed., §§ 128, 146, 260."

The court held, at page 128 of 262 U.S., at page 509 of 43 S.Ct.:

"Examining the act as a whole, we think it shows very plainly, *first, that it is intended to be operative throughout the territorial limits of the United States,* * * * *secondly, that it is not intended to apply to domestic vessels when outside the territorial waters of the United States,* and, thirdly, that it is intended to apply to all merchant vessels, whether foreign or domestic, when within those waters, * * *."* (Emphasis supplied.)

The holding of applicability of the law to ships carrying the flags of foreign nations while in territorial waters of the United States and nonapplicability to ships flying under the flag of the United States while outside the territorial waters of the United States is a distinct repudiation of the Association's theory that for the purposes here involved airplanes are a part of the territory of the country whose flag they fly.

Of equal cogency is the earlier case of Scharrenberg v. Dollar S. S. Co., 1917, 245 U.S. 122, 127, 38 S.Ct. 28, 29, 62 L.Ed. 189, where the Supreme Court stated:

"Equally unallowable is the contention that a ship of American registry engaged in foreign commerce is a part of the territory of the United States in such a sense that men employed on it can be said to be laboring 'in the United States' or 'performing labor in this country.' It is, of course, true that for the purposes of jurisdiction a ship, even on the high seas, is often said to be a part of the territory of the nation whose flag it flies. But in the physical sense this expression is obviously figurative (International Law Digest, Moore, vol. I, § 174), and *to expand the doctrine to the extent of treating seamen employed on such a ship as working in the country of its registry is quite impossible.* Thus the seamen employed on the 'Mackinaw' were not within either the spirit or the letter of the law on which the petitioner bases his action and in any point of view his contention is fanciful and unsound and must be denied." (Emphasis supplied.)

We think that to sustain coverage under the Railway Labor Act for the employees here involved without specific statutory direction so to do and solely on the basis that they serve in airplanes flying the flag of the United States would

**178**

do violence to the holding in both the Cunard and Scharrenberg cases.

In construing the Railway Labor Act in this case, we have in mind the rule that unless there is an explicit and unequivocal showing of a contrary intent, Acts of Congress are to be given an interpretation which is domestic in nature. In Foley Bros. v. Filardo, 1949, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680, the Supreme Court had before it the applicability of the Eight Hour Law, 40 U.S.C.A. § 324, as amended by 40 U.S.C.A. § 325a, to work done under a contract between the United States and a private contractor on construction projects in Iraq and Iran. In holding the law inapplicable to the contract involved, Mr. Justice Reed, speaking for the Supreme Court, stated at page 285 of 336 U.S., at page 577 of 69 S.Ct.:

> "*First*. The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States, Blackmer v. United States, supra, 284 U.S. 421, at page 437, 52 S.Ct. 252, at page 254, 76 L.Ed. 375, is a valid approach whereby unexpressed congressional intent may be ascertained. It is based on the assumption that Congress is *primarily concerned* with domestic conditions."

Applying that "canon of construction" to the Railway Labor Act and also giving heed to 49 U.S.C.A. § 1(2) which limits its applicability to transportation or transmission which takes place within the United States, we are forced to the conclusion that the act is strictly limited to the continental United States and its territories and does not include the employees here concerned.

The Association also argues the desirability of having the Railway Labor Act applicable to all employees alike, whether they be hired in foreign territory for service between foreign points or otherwise. Such argument addresses itself to the Congress and not to the courts.

Affirmed.