**AIR LINE DISPATCHERS ASS'N et al. v.
NATIONAL MEDIATION BOARD et al.**

No. 10661.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 15, 1950.

Decided May 17, 1951.

Mr. B. F. Napheys, Jr., Denver, Colo., of the Bar of the Supreme Court of Colorado, pro hac vice, by special leave of Court, with whom Messrs. Walter M. Bastian and A. K. Shipe, Washington, D. C., were on the brief, for appellants.

Mr. J. Roger Wollenberg, Attorney, Department of Justice, of the Bar of the Supreme Court of California, pro hac vice, by special leave of Court, with whom Asst. Atty. Gen. Herbert A. Bergson, and Messrs. Gerald L. Phelps and Joe F. Nowlin, Attys., Department of Justice, were on the brief, for appellees. Messrs. George Morris Fay, U. S. Atty., and Joseph M. Howard, Asst. U. S. Atty., also entered appearances for appellees.

Before CLARK, PRETTYMAN, and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The Air Line Dispatchers Association, a labor organization, filed with the National Mediation Board, under the Railway Labor Act (44 Stat. 577, as amended, 45 U.S.C.A. §§ 151 et seq.), an application for an investigation of an alleged representation dis-

pute among the flight dispatchers of Pan American-Grace Airways, Inc. The Company operates and the dispatchers are employed solely outside the continental limits of the United States. There was a dispute between the Association and the Company as to whether the Act applies to such carriers and employees. In view of the importance of the question to airlines operating in foreign countries as well as to the particular Company and its employees, the Board held a public hearing. Its resulting Determination concludes that while there appears to be no constitutional impediment to extension by Congress of the Railway Labor Act to employees in foreign countries employed by United States carriers by air, the Act by its terms limits the Board's jurisdiction to the continental United States and its territories. The application was accordingly dismissed.

The Association, invoking both the Administrative Procedure Act (5 U.S.C.A. § 1009) and Section 24(8) of the Judicial Code (28 U.S.C. § 1337), sued the Board and its members in the United States District Court for the District of Columbia, seeking a judgment that the Board has jurisdiction and should determine the dispute. On motion of the defendants the complaint was dismissed, the court deeming judicial review precluded by Switchmen's Union v. National Mediation Board, 1943, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61, and United Transport Service Employees v. National Mediation Board, 1949, 85 U.S.App.D.C. 352, 179 F.2d 446.

■ I (A). By the Switchmen's decision the Supreme Court clearly does preclude review by the courts of Board action determining a disputed question of representation under Section 2, Ninth, of the Railway Labor Act. The Court, however, *in passim*, said: "Generalizations as to when judicial review of administrative action may or may not be obtained are of course hazardous. Where Congress has not expressly authorized judicial review, the type of problem involved" as well as the "history of the statute in question" becomes highly relevant (320 U.S. at page 301, 64 S.Ct. at page 97, 88 L.Ed. 61).

■ In the companion case of General Committee v. Missouri-Kansas-Texas R. Co., 1943, 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76, the Court referred to a similar situation as follows:

"* * * the present controversy grows out of an application of the principles of collective bargaining and majority rule. It involves a jurisdictional dispute—an asserted overlapping of the interests of two crafts. * * *

"It seems to us plain that when Congress came to the question of these jurisdictional disputes, it chose not to leave their solution to the courts." (320 U.S. at pages 334, 336, 64 S.Ct. at page 151.)

It is in this context in which we read further in the opinion: "In view of the pattern of this legislation and its history the command of the Act should be explicit and the purpose to afford a judicial remedy plain before an obligation enforcible in the courts should be implied." (320 U.S. at page 337, 64 S.Ct. at page 152.)

Court review was also denied in General Committee v. Southern Pacific Co., 1943, 320 U.S. 338, 64 S.Ct. 142, 88 L.Ed. 85, involving "a jurisdictional controversy between two unions." (320 U.S. at page 343, 64 S.Ct. at page 145.) In Order of Railway Conductors v. National Mediation Board, 1944, 79 U.S.App.D.C. 1, 141 F.2d 366, this court interpreted the Switchmen's case as holding that the federal courts lack jurisdiction to review in any respect the action of the Board in jurisdictional representation disputes. United Transport Service Employees v. National Mediation Board, 1944, 79 U.S.App.D.C. 15, 141 F. 2d 724, also dealt with a representation dispute between two labor organizations. See, also, Kirkland v. Atlantic Coast Line R. Co., 1948, 83 U.S.App.D.C. 205, 167 F.2d 529; United Transport Service v. National Mediation Board, 1949, 85 U.S. App.D.C. 352, 179 F.2d 446, 449, and Radio Officers' Union v. National Mediation Board, 1950, 86 U.S.App.D.C. 319, 181 F.2d 801.

In each of these cases the Board had chosen between alternate methods of

settling a dispute over representation under Section 2, Ninth, of the Act. The question was not as to the power of the Board to resolve the dispute but whether it had done so in an erroneous manner. The case now before us is quite different. Here there has been a refusal to take any action to resolve the dispute, upon the view that Congress has not extended the powers of the Board to an employer and its employees geographically situated as are these disputants; that is, outside the continental United States and its territories. This in no sense is Board action within the framework of Section 2, Ninth, or, indeed, within any other of the provisions of the Act for administrative resolution of industrial-labor disputes. This is a different "type of problem" (320 U.S. at page 301, 64 S.Ct. at page 97, 88 L.Ed. 61). The cases have not dealt with the power of the courts to consider the purely legal question of the territorial jurisdiction of the Board. It was said in the Switchmen's opinion: "If the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control. That was the purport of the decisions of this Court in Texas & New Orleans R. Co. v. Brotherhood of Clerks, 281 U.S. 548 [50 S.Ct. 427, 74 L.Ed. 1034], and Virginian Ry. Co. v. System Federation, 300 U.S. 515 [57 S.Ct. 592, 81 L.Ed. 789]. In those cases it was apparent that but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act." (320 U.S. at page 300, 64 S.Ct. at page 97.)

It could as well be said, though in a more limited territorial application, that the airline dispatchers would suffer a sacrifice or obliteration of a right Congress has created in their behalf were the Board by an erroneous ruling to leave them completely outside the true reach of the statute.

That review of such a question has not been hitherto foreclosed to the courts is indicated by the reservation contained in General Committee v. Missouri-Kansas-Texas R. Co., 320 U.S. at page 336, note 12, 64 S.Ct. 146, 152, 88 L.Ed. 76, as follows:

"Whether judicial power may ever be exerted to require the Mediation Board to exercise the 'duty' imposed upon it under § 2, Ninth and, if so, the type or types of situations in which it may be invoked present questions not involved here."

A similar reservation appears in Order of Railroad Conductors v. Pennsylvania R. Co., 1944, 323 U.S. 166, 172, 65 S.Ct. 222, 89 L.Ed. 154.

(B). The law was in this posture when the Administrative Procedure Act (5 U.S.C.A. §§ 1001–1011) was approved June 11, 1946. In § 10 it provides:

"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion—

"(a) Right of Review.—Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof." (5 U.S.C.A. § 1009.)

We pointed out in Kirkland v. Atlantic Coast Line R. Co., supra, that the limitations upon judicial review set forth in the Switchmen's and like cases must be considered as read into the Administrative Procedure Act; that is, review is not available under § 10 where a statute, as judicially interpreted,[1] precludes it. The Attorney General's Manual on the Administrative Procedure Act (1947), p. 136, states the position: "This section, in general, declares the existing law concerning judicial review. It provides for judicial review except insofar as statutes preclude it, or insofar as agency action is by law committed to agency discretion. A statute may in terms preclude judicial review or be interpreted as manifesting a congressional intention to preclude judicial review. Examples of such interpretation are: Switchmen's Union of North America v.

---

1. As originally introduced the legislation would have required the statute "expressly" to preclude review. (S. 7, H.R. 1203, 79th Cong., 1st Sess.) The word "expressly" was eliminated.

National Mediation Board (320 U.S. 297 [64 S.Ct. 95, 88 L.Ed. 61]); American Federation of Labor v. National Labor Relations Board (308 U.S. 401 [60 S.Ct. 300, 84 L.Ed. 347]); Butte, Anaconda & Pacific Railway Co. v. United States (290 U.S. 127 [54 S.Ct. 108, 78 L.Ed. 222]). * * *" (Sen.Doc.No.248, 79th Cong., 2d Sess., pp. 229–230.)

■■ Nevertheless the purpose of § 10 is to afford review unless the matter has been committed to agency discretion—a situation not now presented—or unless Congress has otherwise decided. When, as in the Switchmen's case, it had been held that Congress had manifested its intention to exclude review the new legislation was not to be construed as changing the situation. On the other hand, the general purport of the statute is that persons suffering legal wrong because of agency action, or adversely affected or aggrieved thereby, should be allowed by § 10 to obtain judicial consideration. (Sen.Doc. No.248, supra, p. 318.) The statement in the Switchmen's opinion (320 U.S. at page 343, 64 S.Ct. at page 145, 88 L.Ed. 85), referred to above, that in view of the history of the Railway Labor Act a purpose to afford judicial remedy must plainly appear should now be read in the light of the purpose of the Administrative Procedure Act subsequently enacted: "Legislative intent to forbid judicial review must be, if not specific and in terms, at least clear, convincing, and unmistakable under this bill. The mere fact that Congress has not expressly provided for judicial review would be completely immaterial." (Sen.Doc.No.248, supra, p. 368. See, also, p. 384.)

■ (C). The type of question now presented was, as we have said, in the area of those reserved under the Railway Labor Act. This being so, and because of the nature of the question, we are of the opinion that the Administrative Procedure Act indicates a Congressional purpose to authorize review of it by the courts. Since it is not a question of the type previously held unreviewable, and since there is no explicitness in the Railway Labor Act or indication in its history of a Congressional intention to leave it exclusively to Board determination, the provisions of § 10 of the Administrative Procedure Act for court review take hold of it.

We draw additional support from Order of Railroad Conductors v. Swan, 1947, 329 U.S. 520, 67 S.Ct. 405, 91 L.Ed. 471. Although the Railway Labor Act does not provide for judicial determination of an unreconcilable conflict of jurisdiction between two Adjustment Boards set up under the Act, the Supreme Court, holding the Switchmen's and companion cases not to apply, said as to such a situation: "We are dealing here with something quite different from an administrative determination which Congress has made final and beyond the realm of judicial scrutiny. We are dealing with a jurisdictional frustration on an administrative level, making impossible the issuance of administrative orders which Congress explicitly has opened to review by the courts.[2] Until that basic jurisdictional controversy is settled, the procedure contemplated by § 3 of the Railway Labor Act remains a dead letter so far as yardmasters are concerned and the statutory rights of such persons become atrophied. A declaratory judgment action is therefore appropriate to remove such an administrative stagnation." (329 U.S. at page 524, 67 S.Ct. at page 407.)

■ (D). Court review not being precluded, jurisdiction of the District Court is found in 28 U.S.C. § 1337, formerly 28 U.S.C. § 41(8), which reads:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." See Switchmen's Union v. National Mediation Board, supra, 320 U.S. at page 300, 64 S.Ct. at page 96, 88 L.Ed. 61.[3]

2. The Act does provide explicitly for court review of certain determinations of Adjustment Boards.

3. No question is raised as to the capacity of the Association to file the suit or as to the appropriateness of the form of

II. Turning to the merits of the decision made by the Board, we agree that the Act does not extend to an air carrier and its employees located entirely outside the continental United States and its territories. The basic statute, the Railway Labor Act, defines the carriers to which it applies as "any * * * carrier by railroad, subject to chapter 1 of Title 49 [Interstate Commerce Act] * * *." (45 U.S.C.A. § 151, First.) "Employee" is defined as a person in the service of a carrier who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission. (Id., § 151, Fifth.) The Interstate Commerce Act is limited in its application to common carriers engaged in interstate and foreign transportation "but only in so far as such transportation * * * takes place within the United States." (49 U.S.C.A. §§ 1(1)(c), 1(2).) There is no question that as applied to railroads the Railway Labor Act does not extend beyond the United States. By Title II (45 U.S.C.A. §§ 181–188), approved April 10, 1936, the Act was extended, with certain exceptions not now material, to common carriers by air "engaged in interstate or foreign commerce" and their employees. (45 U.S.C.A. § 181.) But Section 202 of said Title II provides: "The duties, requirements, penalties, benefits, and privileges prescribed and established by the provisions of title I of this Act, except section 3 thereof, shall apply to said carriers by air and their employees in the same manner and to the same extent as though such carriers and there employees were specifically included within the definition of 'carrier' and 'employee', respectively, in section 1 thereof." (45 U.S.C.A. § 182.)

The Board therefore properly concluded that the territorial scope of the Act in its application to air transport was like that applicable to railroads. The legislative history, though somewhat ambiguous, confirms this view. Hearings before a Subcommittee of the Senate Committee on Interstate Commerce on S.2496, 74th Cong., 1st Sess. (1935), pp. 5, 9, 12. At the last reference, Senator Black referred to the amendment as giving "exactly the same range to the men engaged in air transport as would be invoked by men engaged in railroad employment"; as Mr. George A. Cooke, then Secretary of the National Mediation Board, testified in response to questioning by Senator Black, it was to "apply with uniformity to both classes of employees." See, also, id., pp. 12–16, 23. Senator Minton characterized the Bill as merely providing "for the extension of the Railway Labor Act provisions to air pilots and mechanics engaged in the air service in interstate commerce." 79 Cong.Rec. 10059 (1935). See, also, H.Rept.No.2243, 74th Cong., 2d Sess. (1936), p. 3; 80 Cong. Rec. 5039 (1936). In view of the provisions of the amending Act and its history we are not able to extend its coverage beyond the territorial limits of the previous coverage of the Railway Labor Act. This is so notwithstanding some general expression of expectations to the contrary by witnesses who, after the 1936 extension of the Act to air carriers, testified in 1937, in support of inclusion in the Civil Aeronautics Act,[4] of provision requiring compliance by air carriers with the provisions of Title II of the Railway Labor Act. (See testimony of Mr. Behncke before the House Committee on Interstate and Foreign Commerce. Hearings before Committee on Interstate and Foreign Commerce on H.R. 9738, 75th Cong., 1st Sess. (1937), pp. 237, 295.) Legislation is ordinarily to be given only domestic application. ·Foley Bros. v. Filardo, 1949, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680. Explicitness is to be expected

action brought by the Association. Its interest is sufficient as the undisputed representative of the men in the present posture of the case. See Texas & New Orleans R. Co. v. Brotherhood of Clerks, 1930, 281 U.S. 548, 50 S.Ct. 427, 74 L. Ed. 1034, and Virginian Ry. Co. v. System Federation, 1937, 300 U.S. 515, 57

S.Ct. 592, 81 L.Ed. 789; and the form of action seems appropriate under the provisions of § 10(b) of the Administrative Procedure Act (5 U.S.C.A. § 1009 (b) ).

4. 49 U.S.C.A. § 401 et seq.

from Congress if its intention is to extend the legislation extraterritorially. Ibid.

The interwoven structure of the original Act and the amendments respecting air transportation do not supply such explicitness. On the contrary, as said in the well reasoned Determination under review, "The Board fails to find any specific direction in the Act, as amended, permitting it to extend its jurisdiction beyond the continental limits of the United States and its territories."

The judgment of the District Court dismissing the complaint is

Affirmed.