AIR LINE STEWARDS AND STEW-
ARDESSES ASSOCIATION, IN-
TERNATIONAL, Petitioner,

v.

NORTHWEST AIRLINES, Inc.,
Respondent.

Civ. No. 3-57-110.

United States District Court
D. Minnesota,
Third Division.

June 10, 1958.

Lee Loevinger, Minneapolis, Minn., Lee Leibik and Ruth Weyand, Chicago, Ill., by Lee Leibik, Chicago, Ill., for petitioner.

Dorsey, Owen, Barker, Scott & Barber, Minneapolis, Minn., by Henry Halladay, Minneapolis, Minn., for respondent.

DONOVAN, District Judge.

This case is before the court on petitioner's motion for summary judgment.[1] The motion is based upon the pleadings, exhibits and affidavits filed with the court. The parties will be referred to as petitioner and respondent.

The file reveals that respondent is a common carrier by air in interstate and foreign commerce, operating domestic and foreign routes under certificates of public convenience and necessity issued

---

1. Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A.

by the Civil Aeronautics Board. It flies a foreign route from Seattle, Washington, to Anchorage, Alaska, or Shemya, Aleutian Islands, to Tokyo, Japan; and from Tokyo to Seoul, Korea; Okinawa; Manila, Philippine Islands; and Hong Kong, through intermediate points.

Petitioner has been duly authorized and designated by the National Mediation Board to represent the craft or class of Airline Flight Pursers, Flight Service Attendants and Stewardesses employed by respondent for the purposes of the Railway Labor Act,[2] hereinafter referred to as the Act.

The instant case stems from a dispute arising out of respondent's hiring foreign nationals as pursers and attendants on flights betwen Tokyo, Seoul, Manila, Hong Kong and intermediate points referred to by disputants as routes "south and west of Tokyo." The dispute was initiated by a group of respondent's employees filing a grievance with the petitioner's and respondent's System Board of Adjustment, charging that the criticized practice violated the governing employment agreement between the parties.

The employees were awarded a decision in the hearing on said grievance to the effect that the employment agreement had been violated by employment of foreign nationals on routes south and west of Tokyo. Respondent contended the award (known as the "Lindquist Award") was impossible of implementation. Extended negotiations between petitioner and respondent followed with a view to compromise. These culminated in a mediation agreement which provided that in the event further contemplated negotiations on the issues were unsuccessful, the respondent's proposals thereon shall be submitted to arbitration under the Act; the specific question to be as follows: "What, if any portion, of the Company's proposals for the use of foreign nationals shall be granted by the Arbitration Board?" This agreement

also provided that respondent pay the sum of $10,000 as liquidated damages for any claim or claims arising under the Lindquist Award prior to settlement or arbitration award on the hiring issue, and that thereafter the Lindquist Award be without force and effect.

Failing to reach a settlement, the hiring issue was submitted to arbitration as provided by the mediation agreement. A third member (other than the two representing the disputants) not having been agreed upon, the National Mediation Board, pursuant to the mediation agreement and the Act, appointed the third or neutral member.[3]

Hearings were had, and determination made by the Arbitration Board. Two members of the Board joined in an award amending the employment agreement to read:

"Award

\* \* \* \* \* \*

"(a) In accordance with the certification (R–1747), made by the National Mediation Board on December 17, 1946, and as amended by the National Mediation Board on October 22, 1948 (R–2079), and June 20, 1950 (R–2295), the Company hereby recognizes the Air Line Stewards and Stewardesses Association, International, as the duly designated and authorized representative of the flight pursers, the flight service attendants, and the stewardesses in the employ of the Company for the purposes of the Railway Labor Act, as amended.

"(b) This Agreement covers all flight pursers, flight service attendants and stewardesses in the employ of the Company who are employed and assigned within the continental limits of the United States and its territories, and of employees in such positions when assigned to those segments of the Company's international passenger flights which originate or terminate in the United

2. 45 U.S.C.A. §§ 151–188.

3. Mr. Francis J. Robinson, of Washington, D. C.

States and its territories, and, also, of employees in such positions when assigned at the discretion of the Company on other international passenger flights except as specifically limited herein.

"(1) The Company shall have the right to assign foreign nationals to all cabin attendant positions on all international passenger flights operating over all international routes south and west of Japan including but not limited to the routes to and from Japan to points in Korea, Okinawa, Formosa, the Philippine Islands, Hong Kong, and to and from any other foreign station that the Company many [may] be certificated to serve, except that one employee covered by this agreement in a classification to be selected by the Company will be assigned to such passenger flights.

"(2) Foreign national cabin attendants assigned to flights under Paragraph (1) of this section will not come within the jurisdiction or scope of this agreement, nor shall any such foreign national employees be covered by nor subject to any provisions of this agreement. * * * "

■ This award was duly acknowledged and filed with the Clerk of this Court. Petitioner seasonably filed a petition to impeach said award on the ground that it plainly does not conform to the substantive requirements laid down by the Act for such awards.[4] Specifically, the petitioner alleges that the award is contrary to the provisions of Section 2,

Fourth, Sixth, Seventh and Ninth of the Act[5], in that it:

(a) Deprives the majority of the craft or class of flight pursers, flight service attendants and stewardesses employed by respondent of the rights granted them by the Act to bargain collectively on behalf of all members of the craft or class, and to protect their wages, hours, seniority and other conditions of employment;

(b) Deprives all foreign nationals hired by respondent as members of the craft or class represented by petitioner of their rights under the Act and the Fifth Amendment to the Constitution to be represented nondiscriminately by the petitioner and to enjoy the same collectively bargained rates of pay, hours, seniority and conditions of employment applicable to all members of the craft or class;

(c) Requires the petitioner to violate its duty under the Act and the Fifth Amendment to represent all members of the craft or class fairly and without discrimination because of race, color, citizenship or national origin.[6]

The respondent's answer admits all the allegations of the petition except that it denies that portion of paragraph 4 which alleges that petitioner is certificated by the National Mediation Board to represent a system wide craft or class comprising all of the employees of respondent in the designated job classifications wherever they are stationed and

4. 45 U.S.C.A. § 159, Third (a). No claim is made that the mediation agreement did not comply with the provisions of 45 U.S.C.A. § 157, nor that the award here involved did not conform nor confine itself to the stipulations of the agreement, nor that it was arrived at by means of some wrongdoing on the part of the members of the Arbitration Board.

5. 45 U.S.C.A. § 152, Fourth, Sixth, Seventh and Ninth.

6. Petitioner relies on Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192,

65 S.Ct. 226, 89 L.Ed. 173, in support of its claim of constitutional duty. The claim is without merit. Respondent's foreign national employees are not residents of this country or its territories entitled to the benefit and protection of the Constitution. Further, it is clear from the Steele case that the constitutional duty is no broader than the duty imposed by the Act itself to represent without discrimination the members of the craft or class represented.

whatever their race, color, citizenship or national origin, and paragraphs 8, 9 and 10, in which petitioner sets forth its reasons why the award should be impeached. The answer alleges that insofar as this court should support petitioner's position, the petitioner is not the proper party to represent the foreign national employees of the respondent.

The issue is thus raised whether the Act applies to respondent and its employees with respect to its flights between points outside the continental United States and its territories. If, as petitioner contends, the Act applies to such flights, those portions of the award which permit respondent to bargain independently with foreign nationals employed by it as cabin attendants (hence within the craft or class which petitioner has been certificated to represent) would violate Section 2, Fourth, of the Act,* and the entire award would, by statutory command, be set aside.[7]

The question is not wholly one of first impression. In Air Line Dispatchers Ass'n v. National Mediation Board, 89 U.S.App.D.C. 24, 189 F.2d 685, certiorari denied 342 U.S. 849, 72 S.Ct. 77, 96 L. Ed. 641, the Court of Appeals for the District of Columbia concluded that the National Mediation Board had properly dismissed an application looking to certification under the Act. In 189 F.2d 690, 691, the court stated:

"Turning to the merits of the decision made by the Board, we agree that the Act does not extend to an air carrier and its employees located entirely outside the continental United States and its territories. The basic statute, the Railway Labor Act, defines the carriers to which it applies as 'any * * * carrier by railroad, subject to chapter 1 of Title 49 [Interstate Commerce Act] * * *.' (45 U.S.C.A. § 151, First.) 'Employee' is defined as a person in the service of a carrier who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission. (Id., § 151, Fifth). The Interstate Commerce Act is limited in its application to common carriers engaged in interstate and foreign transportation 'but only in so far as such transportation * * * takes place within the United States.' (49 U.S.C.A. §§ 1(1) (c), 1(2).) There is no question that as applied to railroads the Railway Labor Act does not extend beyond the United States. By Title II (45 U.S.C.A. §§ 181–188), approved April 10, 1936, the Act was extended, with certain exceptions not now material, to common carriers by air 'engaged in interstate or foreign commerce' and their employees. (45 U.S.C.A. § 181.) But Section 202 of said Title II provides: 'The duties, requirements, penalties, benefits, and privileges prescribed and established by the provisions of title I of this Act, except section 3 thereof, shall apply to said carriers by air and their employees in the same manner and to the same extent as though such carriers and their employees were specifically included within the definition of "carrier" and "employee", respectively, in section 1 thereof.' (45 U.S.C.A. § 182.)

"The Board therefore properly concluded that the territorial scope of the Act in its application to air transport was like that applicable to railroads. The legislative history, though somewhat ambiguous, confirms this view. * * * Legislation is ordinarily to be given only domestic application. Foley Bros. v. Filardo, 1949, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680. Explicitness is to be expected from Congress if its intention is to extend the legislation extraterritorially. Ibid.

"The interwoven structure of the original Act and the amendments respecting air transportation do not

---

* 45 U.S.C.A. § 152, Fourth.

7. 45 U.S.C.A. § 159, Fourth.

supply such explicitness. On the contrary, as said in the well reasoned Determination under review, 'The Board fails to find any specific direction in the Act, as amended, permitting it to extend its jurisdiction beyond the continental limits of the United States and its territories."

Petitioner would distinguish the Air Line Dispatchers' case, supra, upon the grounds that the air carrier involved operated solely outside the United States and its territories and that the employees involved were not members of aircraft crews. Its reasoning is that no extraterritorial application of the Act is involved when the air carrier flies ships of United States registry and the employees are members of the crews of such aircraft. In effect, petitioner's position is that the doctrine of the "law of the flag", known to maritime commerce, applies to aircraft with the result that such aircraft are comprehended within the term, territories of the United States, to which the Act applies.

Parallels of commerce by air, with maritime, rail and similar older forms of transit, are instructive and appropriate in rationalizing when confronted with the problem here in issue, but as said by Mr. Justice Jackson (concerning the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq.):

"We find no indication that the Congress either entertained or fostered the narrow concept that airborne commerce is a mere outgrowth or overgrowth of surface-bound transport. Of course, air transportation, water transportation, rail transportation and motor transportation all have a kinship in that all are forms of transportation and their common features of public carriage for hire may be amenable to kindred regulations. But these resemblances must not blind us to the fact that legally, as well as literally, air commerce, whether at home or abroad, soared into a different realm than any that had gone before. * * *. However useful parallels with older forms of transit may be in adjudicating private rights, we see no reason why the efforts of the Congress to foster and regulate development of a revolutionary commerce that operates in three dimensions should be judicially circumscribed with analogies taken over from two-dimensional transit."[8]

An Act of Congress is intended to apply within the territorial jurisdiction of the United States, unless a contrary intent appears. The instant case has to do with regulating labor conditions beyond the bounds of the United States. The intention so to do cannot be attributed to Congress in the absence of a clearly expressed purpose.[9]

Our Supreme Court, with clarity and finality, treats air transportation as a type of commerce to be considered apart and distinguishable from foreign commerce by sea.[10] From this it may be inferred that it is not to be read into the Act as a concept of the law of the flag as contended for by petitioner. In other words, to absent the clearly expressed purpose to read into the Act the concept of the law of the flag as applied to commerce by sea would amount to judicial legislation, to which this court declines to resort.[11]

Petitioner's motion is denied.

It is so ordered.

An exception is allowed.

8. Chicago & Southern Air Lines v. Waterman Corp., 333 U.S. 103, 107, 108, 68 S.Ct. 431, 434, 92 L.Ed. 568.

9. Foley Bros. v. Filardo, 336 U.S. 281, 285, 286, 69 S.Ct. 575, 93 L.Ed. 680.

10. Chicago & Southern Air Lines v. Waterman Corp., supra.

11. The Pan American Convention on commercial aviation of 1928, 47 Stat. 1903, and the Chicago Convention on International Civil Aviation of 1944, 61 Stat. 1180, do not require an opposite result. Far from adopting the concept of aircraft as being a part of the territory of the country of registry, these treaties merely assign "nationality" to aircraft.