515 F.2d 367
 169 U.S.App.D.C. 136, 1975-1 Trade Cases 60,378
 CONSUMER FEDERATION OF AMERICA et al., Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
CONSUMER FEDERATION OF AMERICA et al., Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent,
Ted Bates & Company, Inc., and ITT Continental Baking
Company, Inc., Intervenors.
CONSUMER FEDERATION OF AMERICA et al., Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent,
Ted Bates & Company, Inc., and ITT Continental Baking
Company, Inc., Intervenors.
ITT CONTINENTAL BAKING COMPANY, Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent,
Consumer Federation of America et al., Intervenors.
TED BATES & COMPANY, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
ITT CONTINENTAL BAKING COMPANY, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
TED BATES & COMPANY, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
 Nos. 73-1574, 73-2138, 73-2239, 74-1172 to 74-1174, 74-1199.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 9, 1975.
Decided June 30, 1975.
 
 Victor H. Kramer, Washington, D. C., with whom Richard B. Wolf and John H. Harwood, II, Washington, D. C., was on the brief for petitioners in Nos. 73-2138 and 73-2239. Larry P. Ellsworth, Washington, D. C., and Alan Mark Silbergeld also entered appearances for petitioners in No. 73-1574.
 John H. Schafer, III, Washington, D. C., with whom Stephen C. Rogers, Washington, D. C., was on the brief for petitioners in Nos. 74-1172 and 74-1174 and intervenor, ITT Continental Baking Co., Inc., in Nos. 73-2138 and 73-2239.
 Marshall Cox, Washington, D. C., with whom Donald J. Mulvihill, Washington, D. C., and Laurence T. Sorkin, New York City, were on the brief for petitioner in Nos. 74-1173 and 74-1199.
 Denis E. Hynes, Atty., Federal Trade Commission, with whom Gerald Harwood, Asst. Gen. Counsel and James P. Timony, Atty., Federal Trade Commission, were on the brief for respondent.
 
 
 1
 Thomas R. Trowbridge, III, New York City, filed a brief on behalf of American Association of Advertising Agencies, Inc., as amicus curiae in Nos. 74-1173 and 74-1199.
 
 
 2
 Before ROBINSON and ROBB, Circuit Judges, and SOLOMON,* Senior United States District Judge for the District of Oregon.
 
 
 3
 Opinion for the Court filed by Senior District Judge SOLOMON.
 
 SOLOMON, Senior District Judge:
 
 4
 The Consumer Federation of America (Consumers),[1] ITT Continental Baking Company, Inc. (ITT Continental), and Ted Bates & Company, Inc. (Bates) petition this Court to review a Federal Trade Commission (FTC or Commission) order. For reasons set forth below, we dismiss for lack of jurisdiction the petitions of Consumers and we transfer the petitions of ITT Continental and Bates to the Court of Appeals for the Second Circuit.
 
 
 5
 In August, 1971, the FTC issued a complaint against ITT Continental and its advertising agency, Bates. The complaint alleged that ITT Continental and Bates violated Sections 5 and 12 of the Federal Trade Commission Act (FTCA), 15 U.S.C. §§ 45, 52, by falsely and deceptively advertising Wonder Bread and Hostess Snack Cakes, two of ITT Continental's products. The complaint proposed "corrective advertising" as a remedy for the deceptive advertising.
 
 
 6
 In June, 1972, the Administrative Law Judge began extensive hearings on the complaint. On December 18, 1972, he issued an initial decision recommending that the complaint be dismissed. The FTC complaints counsel appealed to the full Commission.
 
 
 7
 On January 5, 1973, Consumers moved to intervene as a party to support the complaint before the full Commission.[2] The Commission denied the motion,[3] but allowed Consumers to file a brief and present oral argument as amici curiae. Consumers urged the Commission to reverse the initial decision and to order extensive corrective advertising.
 
 
 8
 On October 19, 1973, the FTC, in its final order on the merits, dismissed most of the complaint. Nevertheless, it sustained an allegation that ITT Continental and Bates had misrepresented Wonder Bread as "an extraordinary food for producing dramatic growth in children". The FTC issued a broad cease and desist order but did not order corrective advertising.
 
 
 9
 On November 5, 1973, Consumers petitioned this Court to review the FTC's refusal to order corrective advertising.[4] Shortly thereafter, ITT Continental and Bates petitioned the United States Court of Appeals for the Second Circuit to review the FTC's cease and desist order. On December 11, 1973, the Second Circuit, pursuant to 28 U.S.C. § 2112(a), transferred those cases to this Court.[5]
 
 
 10
 During November, 1973, ITT Continental and Bates filed motions to reconsider with the FTC. On December 14, 1973, the Commission issued an order which revised its October 19th order. Consumers petitioned this Court for review of the December 14th order.[6] ITT Continental and Bates again filed for review in the Second Circuit; that Court again transferred the cases here.[7] The petitions of ITT Continental, Bates, and Consumers were consolidated here.
 
 
 11
 ITT Continental and Bates were granted leave to intervene in the petitions for review filed by Consumers. On January 21, 1974, the intervenors filed a motion to dismiss Consumers' petitions; they also filed a motion to transfer their petitions back to the Second Circuit.
 
 
 12
 We grant both motions.
 
 
 13
 This Court does not have jurisdiction to hear Consumers' petitions.
 
 
 14
 Section 5(c) of the FTCA, 15 U.S.C. § 45(c), provides that:
 
 
 15
 "Any person, partnership, or corporation required by an order of the (Federal Trade) Commission to cease and desist from using any method of competition or act or practice may obtain a review of such order in the court of appeals of the United States . . .."
 
 
 16
 Consumers concede that Section 5(c) does not grant this Court jurisdiction to hear their petition. They contend, however, that we have jurisdiction under Section 10(b) of the Administrative Procedure Act (APA), 5 U.S.C. § 702:
 
 
 17
 "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."
 
 
 18
 Under the APA, judicial review of administrative action is the rule, Barlow v. Collins, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), unless there is a statutory prohibition of judicial review or unless agency action is committed to agency discretion by law. Section 10(a), 5 U.S.C. § 701. ITT Continental and Bates contend that Section 5(c) of the FTCA only allows judicial review for parties subject to an FTC cease and desist order and therefore Consumers are not entitled to review under the APA. We agree.
 
 
 19
 Consumers rely on language in Pepsico, Inc. v. FTC, 472 F.2d 179, 185-86 (2d Cir. 1972), which suggests that a non-party to FTC proceedings may be entitled to seek review of an FTC order in a district court. This, Consumers contend, supports their argument that Section 5 does not limit judicial review to parties subject to FTC orders. We disagree.
 
 
 20
 The issue before the Pepsico Court was whether the FTC's denial of motions to dismiss a complaint for failure to join indispensible parties was "final agency action" subject to judicial review under Section 10(c) of the APA, 5 U.S.C. § 704. In its analysis, the Court referred to a cease and desist order as a clear example of final FTC action. The Court noted that in that hypothetical situation, not before the Court, a party subject to a cease and desist order could seek review in a court of appeals; the Court went on to suggest that even a non-party who was "adversely affected or aggrieved" by the agency action, 5 U.S.C. § 702, could seek review in a district court.
 
 
 21
 The Pepsico Court was not required to nor did it decide whether Section 5(c) of the FTCA precludes judicial review for a person not subject to an FTC cease and desist order. The issue was whether the FTC's denial of motions to dismiss was final agency action, not whether persons not named in a cease and desist order were entitled to review.
 
 
 22
 A statutory prohibition of judicial review will be found only upon a showing of "clear and convincing evidence" of legislative intent to prohibit review. Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Nevertheless, the prohibition need not be express. Legislative intent to prohibit review may be shown by legislative history. Air Line Dispatchers Association v. National Mediation Board, 89 U.S.App.D.C. 24, 189 F.2d 685, 688 (1951); see also National Welfare Rights Organization (NWRO) v. Finch, 139 U.S.App.D.C. 46, 429 F.2d 725, 736 (1970).[8]
 
 
 23
 We believe that the legislative history of Section 5(c) presents clear and convincing evidence of a legislative intent to allow review of FTC cease and desist orders only on the petition of parties subject to the orders.
 
 
 24
 Section 5, as originally drafted, precluded anyone other than the Commission itself from seeking judicial review of an FTC order.[9] Several Senators proposed amendments which included provisions to expand the class of persons entitled to review.
 
 
 25
 The principal amendments on judicial review were proposed by Senators Cummins and Pomerene. The main difference between their proposals was the broad review under the Pomerene amendment and the narrow review under the Cummins amendment.[10] The amendments differed on who were entitled to initiate review proceedings and the scope of such review.
 
 
 26
 The narrow amendment, proposed by Senator Cummins, authorized the FTC to bring an enforcement action; it also allowed judicial review of an FTC order for any "person, partnership, or corporation named in the complaint."[11] Complainants were not entitled to review.[12] Senator Cummins thought that this restriction was proper because he believed that the FTC would protect both the rights of persons injured by unfair competition and the rights of society in general.[13]
 
 
 27
 The broader amendment, proposed by Senator Pomerene, extended review to FTC complainants and to the Attorney General of the United States.[14] Before the Senate voted on Section 5, the Committee on Interstate Commerce withdrew its original Section 5[15] and inserted the Pomerene amendment.[16]
 
 
 28
 On August 1, 1914, the Senate, as in Committee of the Whole, rejected the Pomerene amendment and adopted the Cummins amendment.[17]
 
 
 29
 Several days later, Senator Pomerene again proposed an amendment to Section 5 which contained a provision allowing review for persons other than those subject to an FTC order.[18] The debate on the amendment focused on whether a complainant had a right to review.[19] The Senate, as in Committee of the Whole, again defeated the amendment.[20] The Senate did adopt another amendment proposed by Senator Pomerene to permit a complainant to participate in judicial proceedings brought by a person subject to the FTC order.[21] The Senate passed the bill[22] and sent it to the House-Senate Conference Committee.
 
 
 30
 Section 5 of the bill reported out of the Conference Committee[23] differed significantly from the Senate bill. The Conference Committee version was the one enacted into law. September 26, 1914, ch. 311, 38 Stat. 719. It provided that both enforcement proceedings brought by the FTC and petitions for review by those subject to cease and desist orders could be heard in courts of appeals, rather than in district courts.[24] Senator Pomerene's provision allowing limited participation in judicial proceedings by a complainant was deleted.
 
 
 31
 In our view the Conference Committee changes negative any intent by the conferees to broaden the category of persons who could seek judicial review. Apparently Senator Cummins was of the same opinion. In reporting the Conference bill to the Senate, Senator Cummins, who was on the Conference Committee, discussed both the substantive and language changes in the review provisions.[25] Because of his strong opposition to the Pomerene amendment, it is significant that Senator Cummins did not object to any change in the provisions for review.
 
 
 32
 This legislative history is clear and convincing evidence that Congress intended to allow judicial review of FTC cease and desist orders only for parties subject to the orders. Competitors who had suffered direct and tangible injury from unfair competition were twice denied the right to seek review. The legislative history of Section 5 shows that Congress did not intend to permit persons and organizations like Consumers, who suffer only remote and intangible injury, to obtain judicial review of FTC orders.
 
 
 33
 None of the amendments to the FTCA removed any of the limitations on who could seek review. The Wheeler-Lea Amendments, March 21, 1938, ch. 49, § 3, 52 Stat. 111, changed the wording of Section 5(c) to its present form; they also made FTC orders final and eliminated the need for commission enforcement proceedings. But these changes did not expand or alter the class of persons who could petition to review an FTC cease and desist order. Cf. Holloway v. Bristol-Myers Corporation, 158 U.S.App.D.C. 207, 485 F.2d 986, 997 (1973).
 
 
 34
 Section 10(b) of the APA does not give this Court jurisdiction to hear Consumers' petitions because Section 5(c) of the FTCA, together with Section 10(a) of the APA, denies judicial review to parties not subject to an FTC cease and desist order.[26]
 
 
 35
 We grant the motion to dismiss Consumers' petitions.
 
 
 36
 Consumers filed their petitions in this Court before ITT Continental and Bates petitioned to the Second Circuit. These cases were transferred to this Court only because of the prior filings by Consumers. Because we hold that this Court has no jurisdiction to hear Consumers' petitions, we grant the motion of ITT Continental and Bates to transfer their cases to the Second Circuit.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d)
 
 
 [1]
 The Consumer Federation of America was joined by the Consumers Union of the United States and the Federation of Homemakers, Inc
 
 
 [2]
 Consumers were aware of the proceedings before the Administrative Law Judge, but they did not seek to participate in them
 
 
 [3]
 In May, 1973, Consumers filed a petition to review that denial. D.C. Cir. No. 73-1574. The FTC's motion to dismiss was not opposed; the motion is granted
 
 
 [4]
 D.C. Cir. No. 73-2138
 
 
 [5]
 D.C. Cir. Nos. 74-1172 and 74-1173
 
 
 [6]
 D.C. Cir. No. 73-2239
 
 
 [7]
 D.C. Cir. Nos. 74-1174 and 74-1199
 
 
 [8]
 We recognize that a statutory grant of review to one class of persons does not necessarily signify a legislative intent to deny review to all others. NWRO v. Finch, supra at 735-36; Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561, 565 (1970). Here, unlike in those cases, the legislative history is not silent on the right of review by parties not mentioned in the statute
 
 
 [9]
 The House bill, H.R. 15613, did not provide for judicial review except for enforcement actions by the Commission. 51 Cong.Rec. 14922 (September 10, 1914); see also id. at 14931 (remarks of Representative Covington). The House passed that bill on June 5 and sent it to the Senate
 Rather than consider amendments to the House bill, the Senate Committee on Interstate Commerce reported to the Senate an entirely new bill. Id. at 14921. As initially reported to the Senate floor by the Committee on Interstate Commerce, the bill provided only for enforcement by the FTC:
 "Whenever the commission, after the issuance of such order, shall find that such corporation has not complied therewith, the commission may petition the district court . . . praying the court to issue an injunction to enforce such order of the commission; and the court is hereby authorized to issue such injunction." H.R. 15613, 63d Cong., 2d Sess. (1914); 51 Cong.Rec. 11181 (June 26, 1914).
 See 51 Cong.Rec. 13066 (July 31, 1914) (remarks of Senator Newlands).
 
 
 [10]
 See, e. g., 51 Cong.Rec. 13045 (July 31, 1914) (remarks of Senator Cummins); id. at 13052 (remarks of Senator Walsh); id. at 13066 (remarks of Senator Newlands); id. at 13107 (remarks of Senator White) (August 1, 1914)
 
 
 [11]
 "If upon such hearing the commission shall find that the person, partnership, or corporation named in the complaint is practicing such unfair competition, it shall thereupon enter its findings of record and issue and serve upon the offender an order requiring . . . that the offender shall cease and desist from such unfair competition. . . . Any suit brought by any such person, partnership, or corporation to annul, suspend, or set aside, in whole or in part, any such order of the commission shall be brought against the commission in a district court of the United States . . . ." Id. at 12873 (July 28, 1941); id. at 13045 (July 31, 1914)
 
 
 [12]
 On the day before the Senate adopted the Cummins amendment, the question of whether an FTC complainant could seek review was discussed:
 "MR. CLAPP. What instrument, then, is there . . . so certain to lead to the enforcement of the law as the right of the individual upon whom the unjust practice has fallen to have a review of the decision, the action, the order of the commission?
 "I believe . . . the party who complains of an unfair practice should have the same opportunity for a review in the courts as the party against whom the unfair practice is alleged."
 "MR. CUMMINS. . . . (W)hat he suggests destroys entirely the value of the order of the commission. . . .
 " . . . It seems to be founded upon good reason, and yet, however advantageous it might be to allow an appeal of that kind in a particular case, you must put over against it the disadvantage of permitting a court to review or retry every case brought and determined by the commission . . . ." Id. at 13050 (July 31, 1914).
 Later that day, Senator Walsh referred to the differences between the Pomerene and Cummins amendments. He said:
 " . . . (U)nder the amendment offered by (Senator Cummins), if one complains before the commission of unfair practices pursued against him by which his business is being ruined, by which he is being wrongfully driven out of the market, and the commission decides against him, determining that the practice complained of is not unlawful, that it is not unfair competition, and dismisses his complaint, that ends the matter as to him. He can never be heard in a court at all upon his complaint. On the other hand, if the decision goes against the corporation and it is adjudged to be guilty of unfair practices in violation of the law it may have a review in the courts . . . .
 " . . . I feel that we ought carefully to guard the rights of the party making the complaint lest at some time or other we should have a commission that has no interest in the maintenance of the law; a commission not desirous of enforcing it against the great combinations, not desirous of enforcing it against those who may sustain friendly relations with members of the commission or those influential with it." Id. at 13053-54.
 
 
 [13]
 On August 1, 1914, less than an hour before the Senate voted to adopt the Cummins amendment, the right to review by complainants was again discussed:
 "MR. PITTMAN. Mr. President, I should like to ask (Senator Cummins) if his amendment provides for any form of appeal by one making complaint to the trade commission, in the event that the trade commission does not grant the remedy to which the complainant believes he is entitled?
 "MR. CUMMINS. It does not. As I said yesterday, that involves opening up everything for a trial de novo. It is impossible to avoid that, if one who is denied relief is given the right to appeal; but I may say that this is not an adversary proceeding. The complaint is initiated by the commission and not by a third person.
 "MR. PITTMAN. Is there any provision for a complaint being made by a third person?
 "MR. CUMMINS. Oh, certainly; anyone has a right to file a complaint with the commission, and if the commission has reason to believe that this section of the law is being violated, it then serves notice of the complaint upon the person or corporation violating it and calls him or it before the commission.
 "MR. PITTMAN. What would be the remedy of the complainant that is, the individual or corporation suffering from oppressive acts complained of if it should transpire that the trade commission had tendencies in favor of the oppressive corporation?
 "MR. CUMMINS. Such a person would sue the offending corporation or association to recover damages.
 "MR. PITTMAN. But he would have no remedy through the proposed commission?
 "MR. CUMMINS. I think not; I hope not. This is a proceeding, as I said yesterday, for the benefit of the people of the country. It is intended to prevent unfair competition. Its enforcement is precisely like that of a criminal statute; society enforces the statute; society, through the commission or through the Government, enforces the law, leaving each individual to the recovery of his damages according to the law, but not through the commission, which is the representative of the Government. That is the theory . . . of this proposed law." 51 Cong.Rec. 13102 (August 1, 1914).
 
 
 [14]
 "Any party to any proceedings brought under the provisions of this section, including the person upon whose complaint such proceedings shall have been begun, if begun on such complaint, as well as the United States, by and through the Attorney General thereof, may obtain a review of any final order made by such commission . . . ." Id. at 12993 (July 30, 1914)
 
 
 [15]
 See footnote 9
 
 
 [16]
 Id. at 13111 (August 1, 1914) (remarks of The President pro tempore); id. at 13044 (July 31, 1914) (remarks of Senator Newlands); id. at 13045 (remarks of Senator Cummins)
 
 
 [17]
 Id. at 13109
 
 
 [18]
 "Any party to any proceedings brought under the provisions of (Section 5), including the person, partnership, or corporation upon whose complaint such proceedings shall have been begun, if begun on such complaint, as well as the United States, by and through the Attorney General thereof, may obtain a review of the findings or final order made by such commission in any district court having jurisdiction to enforce any order . . . ." Id. at 13315 (August 5, 1914)
 
 
 [19]
 In introducing the amendment, Senator Pomerene said:
 "My purpose in offering this amendment again is to call attention briefly to the very great difference between the provisions of the amendment offered by (Senator Cummins) and the provisions of that offered by myself in this respect. Under the amendments of (Senator Cummins) there is no provision whereby the complainant before the commission can have any hearing whatsoever if the decision of the commission is against him.
 "It is just as likely that the commission will be wrong in dismissing the complaint as it is that it will be wrong in finding against the accused. To my mind it is un-American to say of two persons to a controversy that one may have a right of review and the other may not . . . ." Id. at 13315.
 Senator Saulsbury thought that allowing a right of review by a complainant would protect against the possibility that the FTC might rule in favor of defendants in order to avoid judicial reversal. Id. at 13315. Senators Walsh and Myers also argued vigorously for a right of review for complainants. Id. at 13316-17.
 
 
 [20]
 Id. at 13317-18
 
 
 [21]
 Id. at 13318
 
 
 [22]
 Id. at 13319
 
 
 [23]
 Id. at 14765-66 (September 5, 1914)
 
 
 [24]
 "If such person, partnership, or corporation fails or neglects to obey such order of the commission while the same is in effect, the commission may apply to the circuit court of appeals of the United States . . . for the enforcement of its order . . . ."
 "Any party required by such order of the commission to cease and desist from using such (unfair) method of competition may obtain a review of such order in said circuit court of appeals . . . ." Id. at 14766.
 
 
 [25]
 Id. at 14768-69
 
 
 [26]
 We need not reach such issues as whether the Consumers have standing here, whether Consumers are "persons aggrieved" within the meaning of Section 10(b), and whether Section 10(b) grants jurisdiction to a court of appeals, as distinguished from a district court