RUTAS AEREAS NACIONALES, S. A. (RANSA), Appellant,

v.

Albert S. ROBINSON, Appellee.

Albert S. ROBINSON, Appellant,

v.

RUTAS AEREAS NACIONALES, S. A. (RANSA), Appellee.

No. 21006.

United States Court of Appeals
Fifth Circuit.

Dec. 4, 1964.

Philip T. Weinstein, Cunningham & Weinstein, Miami, Fla., for appellant.

Guion T. DeLoach, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal and cross-appeal from an order of the district court confirming a report of a special master which resulted in a judgment against the appellant for certain items of severance pay, unemployment compensation, unpaid salary and other items resulting from the cessation of operation by appellant for a period in July 1960.

Robinson, United States citizen and resident of Miami, Florida, had been a pilot for the defendant Venezuelan Airline (RANSA) since April 1952. In July 1960, RANSA's President was arrested for an alleged plot to kill the President of Venezuela; political, financial, and labor troubles for the company ensued. A number of RANSA's creditors in Florida filed a suit for receivership in a Florida State Court. This suit was

removed to the Federal District Court and a Receiver was appointed to control RANSA's Florida property. The Receiver announced to RANSA employees in the middle of July 1960 that practically all Miami-based personnel were released.

Robinson is one of five Miami-based American pilots who intervened in the action before the district court seeking various terminal benefits provided under the Venezuelan Labor Code. In addition, they sought full pay from July 1960 until the expiration date of their non-renewable Venezuelan flying permits, contending that they had not had their employment legally terminated until that date.

The case was referred to a special master who found (1) that the Venezuelan Labor Code applied, (2) that the pilots were "unjustifiably" discharged and, therefore, were entitled to terminal benefits under the Code and (3) that the pilots were not owed any salary after July 15, 1960. The district court adopted the master's findings and awarded judgments in accordance with his calculations of the benefits due each pilot. Robinson's case alone is before us, it appearing that the other litigants have settled their differences.

There are three principal questions here to be resolved: (1) is the Venezuelan Labor Code applicable in the case at bar; (2) under the Venezuelan Code was Robinson entitled to terminal benefits for "unjustified" discharge; (3) was the master's calculation of the benefits due Robinson correct? We conclude that the first two questions must be answered in the affirmative but find that the calculation of the benefits by the master was erroneous to the extent of several thousand dollars.

In pursuing its contention that Robinson was not protected by the provisions of the Venezuelan Labor Code, appellant contends that whatever theory is adopted by this Court as to the choice of law question the Venezuelan law cannot be recognized as fixing the obligations and rights of the parties here. Appellant contends that Florida and Federal public policy frowns upon the enforcement of foreign labor laws; that under the standard Conflict of Laws rules prevailing in Florida the place of making and the place of performance of Robinson's employment contract would require the application of Florida law; that there was no indication that the parties intended the Venezuelan law to apply; and that if it should be determined that Florida uses the so-called "center of gravity" or "grouping of contacts" rule, Venezuelan law would be excluded.

■ It is agreed that the federal court sitting in a diversity case follows the Conflict of Laws rules prevailing in the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. We thus look to see what law Florida would apply to such a situation as is now presented to the Court. We find nothing in the case of Urda v. Pan American World Airways, 5 Cir., 211 F.2d 713, to suggest that this Court has held that the State of Florida "disfavors" the application of the law of a foreign state as to which a Florida resident has the appropriate contractual relationships where nothing in the Florida Statute is inconsistent with the application of the foreign law. Neither do we think that railway labor cases, such as Air Line Stewards & Stewardesses Assn. Inc. v. Northwest Orient Airlines, 8 Cir., 267 F.2d 170, cert. den., 361 U.S. 901, 80 S.Ct. 208, 4 L.Ed.2d 156, and Air Line Stewards & Stewardesses Assn. International v. Trans World Airlines, Inc., 2 Cir., 273 F.2d 69, cert. den., 362 U.S. 988 80 S.Ct. 1075, 4 L.Ed.2d 1021, indicate a federal policy against the recognition and application of favorable foreign statutes that by their terms would provide benefits for employees having sufficient contacts with the foreign state.

■ Appellant's contention that the standard Conflict of Laws rules prevailing in Florida, that is, the place of making and the place of performance of Robinson's employment, should apply and thus exclude the Venezuelan Labor Code avails the appellant not at all. This is true because the trial court had ample

ground for affirming findings of fact by the master that:

(1) The employer was a Venezuelan corporation with its home office and principal place of business in Venezuela.

(2) The employer was substantially owned by Venezuelans.

(3) Its chief executive officer was a Venezuelan.

(4) The Airline was governed by the laws and regulations of Venezuela.

(5) The claimants (Robinson) may have made an effort to seek employment in Florida, but the acceptance of the offer and original contract of hire of each was made in Venezuela.

(6) The pilots had to go to Venezuela for physical exams, flight checks and issuance of Venezuelan pilots licenses before being hired.

(7) A labor contract between a Venezuelan pilots association of which the claimants were members, became their contract of hire during the latter period of employment.[1]

(8) This labor contract embodied by reference the Venezuelan Labor Code at least in part.

(9) The place of performance was between Miami and Venezuela with some side trips in Venezuela.

Thus, it is plain, that even under what appellant calls the "standard Conflict of Laws rules prevailing in Florida," Venezuelan law would control.

A recitation of the facts found by the trial court, in adopting the findings made by the master, equally demonstrates that if Florida were to be held to have adopted the "grouping of contacts" rule[2] the Venezuelan law would also control.

We conclude, therefore, that the court did not err in determining that the Venezuelan Labor Code was applicable in the case at bar.

■ We turn next to the second question, that is whether under the Venezuelan Code Robinson was entitled to terminal benefits for "unjustified" discharge. The appellant does not contest the interpretation made by the master dealing with the benefits which he found Robinson became entitled to. It based its contention under this part of the appeal on the fact that there was no unjustified discharge because the contract was terminated by force majeure, and also on the ground that a Venezuelan Court would not give extra territorial effect to its own labor code. We think that neither of these defenses was sustained, and we affirm the finding of the trial court that there was an unjustified discharge entitling Robinson to the benefits provided for under the various sections of the Venezuelan Labor Code.

■ Turning finally to the question of the correctness of the master's calculation of the benefits due Robinson, we get no help at all from the appellant. It did not respond as appellee to the cross-appeal filed by Robinson contending that the amounts awarded were insufficient. Nor did it discuss in its brief as appellant the method of calculation of the amounts due. On the other hand, we cannot accept as supported by the record the contentions made by Robinson, the appellee in the main appeal, appellant on the cross-appeal. Robinson's brief does not

1. Although this contract by its terms expired in May of 1960, approximately three months before the termination of employment, the master was also authorized to find that its terms continued in effect pending negotiations of a new contract.

2. Appellant sums up the requirements which it distilled from reading of Draft No. 6 of the American Law Institute's Restatement of Conflict of Laws Second by stating that the factors to be considered in determining which jurisdiction contract has the most significant relationship with, as follows:

(a) Place of contracting;

(b) Place of performance;

(c) Place of the subject matter of the contract;

(d) Domicile, nationality, place of incorporation and place of business of the parties;

(e) The law under which the contract will be most effective; and

(f) Other contacts.

clearly delineate the errors complained of with respect to the master's computation. Moreover, some of the contentions made in his brief are clearly without foundation. Nevertheless, by studying the record, including the exhibits that were introduced without dispute, we have concluded that it is possible for us to make a final determination as to the correct amounts representing the awards that should be made to Robinson under each of the categories which the master found he was entitled to benefit from.

The master found that Robinson was entitled to benefits under Article 37 and Article 39. These provide for separation pay and unemployment pay respectively. He also awarded Robinson one month's vacation pay, a small item representing an outstanding debt due Robinson and a bonus which appears to have been computed as one week's pay.

As we have noted, Rutas gives us no help in determining the correctness of the master's computation by which he arrived at an average monthly pay of $1,044 which he used to compute Article 37 pay. This was to be computed by multiplying one half of the month's compensation by eight, the number of years Robinson had worked for the company. The Article 39 award would be an equal sum. On the other hand, the brief of the appellee Robinson is of little help in this regard because it does not clearly identify the correct standard by which to measure the monthly compensation. Nevertheless, we find that both parties agreed to the introduction of documents showing the exact compensation paid by Rutas to Robinson for the six month period ending June 30, 1960. This shows average monthly compensation for the first six months of 1960 of $1,247.50. This is the amount shown on the withholding tax statement furnished by Rutas to the Federal Government and it was introduced by Robinson in proof of his compensation. Robinson also introduced a letter from the company dated March 17, 1961 deflecting the same amount as his compensation for the first two quarters of the calendar year 1960. In the absence of any counter showing by Rutas in this Court by brief or otherwise, we think it proper to take this figure as representing the monthly salary to be used in computing the Article 37 and Article 39 benefits. These would, therefore, total the sum of $10,180.

With respect to the item for vacation pay, however, Robinson made a claim on his own behalf in which he stated that this amount should be $1,045.36. In view of his contention that this is a correct amount, we do not see how the Court would be justified in allowing him a larger amount. We, therefore, conclude that the master's finding that he was entitled to the sum of $1,044 for one month's paid vacation should be changed to $1,045.36.

As relates to the bonus, the master took one-fourth of the monthly compensation to arrive at the bonus figure to represent one week's pay. In light of the doubt as to whether the month's compensation be the $1,045.36 figure or the $1,247 figure, we do not feel it proper to disturb the master's finding with respect to this item and leave the figure of $261 as a bonus to stand. So, too, as to the indebtedness item of $535.90.

Robinson strenuously contends that he was also entitled to one month's salary under Article 28 which provides for one month's notice before discharge and, if such notice is not given, to one month's pay. No reason is seen why this provision should not apply since, it is clear, in the record that Robinson did not receive the one month's notice. The master made no mention of Article 28 and neither did the trial court. As stated above, Rutas makes no counter argument against Robinson's claim in his brief here that he is entitled to one month's additional compensation under the notice provision. We agree that the contract on its face provides for such a payment. In view of the fact that Robinson's claim for the benefit under Article 28 is limited by him to the sum of $1,045.36, we conclude that the master's report erred in not containing this item as a part of Robinson's benefits.

Summarizing, the record clearly demonstrates that the correct amounts that should have been found by the master are the following:

| | |
|---|---|
| Article 37 payment | $ 5,090.00 |
| Article 39 payment | $ 5,090.00 |
| Vacation pay (One month's salary) | $ 1,045.36 |
| Debt | $ 535.90 |
| Article 28 Notice pay (One month's pay) | $ 1,045.36 |
| Bonus (One week's pay) | $ 261.00 |

The judgment is affirmed on the main appeal. The judgment is reversed on the cross-appeal to the extent indicated in the computation of the amounts of benefits due Robinson, and the case is remanded to the trial court for the entry of a judgment in accordance with the computations included in this opinion.